Pioquinto **MENDOZA**, III, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–00–00521–CR.

Court of Appeals of Texas, San Antonio.

July 25, 2001.

Rehearing Overruled Aug. 21, 2001.

Discretionary Review Granted Feb. 13, 2002.

Fernando Sanchez, Law Offices of Fernando Sanchez, Laredo, for appellant.

Oscar J. Hale, Assistant District Attorney, Laredo, for appellee.

Sitting: TOM RICKHOFF, ALMA L. LÓPEZ, and SARAH B. DUNCAN, Justices.

Opinion by ALMA L. LÓPEZ, Justice.

Appellant, Mendoza, and co-defendant, Jorge Aguillon, were indicted on August 17, 1999 for the offense of murder. Mendoza signed a written confession to the murder. The trial court heard evidence on his motion to suppress and denied the motion, allowing it to be used at trial. One week prior to trial, on July 6, 2000, Mendoza filed a motion to sever his trial from that of his co-defendant. The motion was heard and denied. At the trial, the jury acquitted Aguillon and convicted Mendoza of murder. Mendoza received a 30–year sentence. He raises two issues on appeal

concerning the denial of severance and denial of proposed jury instructions.

## BACKGROUND

Relvy Ramon Martinez died of multiple gunshot wounds on or about June 22, 1999. On June 24, 1999, a fourteen-year-old juvenile, Joe Martinez, reported the murder to an investigator at the Webb County District Attorney's Office. Based on this information, investigators went to a brushy area behind the Laredo Country Club and located the body and the deceased's car. Joe implicated Mendoza and the co-defendant Aguillon. After obtaining arrest and search warrants, the investigators arrested Mendoza at the public library and searched his residence. During a custodial interrogation, according to Mendoza's trial testimony, the two investigators played "good cop/bad cop" and Mendoza was threatened with the death penalty unless he confessed. Mendoza gave an oral statement and signed a written statement confessing to the killing and implicating co-defendant Aguillon and Joe Martinez. Mendoza also led an investigator to the place where a 22–caliber rifle was hidden in a field near his residence.

Mendoza sought a separate trial from Aguillon on the grounds that they would be presenting antagonistic defenses. At trial, Mendoza's confession was admitted into evidence. Mendoza also testified at the trial, denied that the confession was true, and stated that the co-defendant, Aguillon, had dropped Mendoza off at the track and used Mendoza's car to pick up Joe Martinez. Mendoza's alibi was that he was at the high school track jogging at the time of the killing. His defense also included several witnesses who testified that they had either seen him at the track or that he had called them and asked them to join him at the track for a jog. Aguillon did not take the stand. Through other witnesses, Aguillon presented an alibi defense that he was enrolled in and attending an evening class which is part of the high school's drop-out recovery program on the evening that the murder occurred.

## SEVERANCE

Mendoza asserts that the court erred in failing to order separate trials for the defendants. With two exceptions, the trial court has the discretion to try two or more defendants jointly or separately. TEX. CRIM. PROC.CODE ANN. art. 36.09 (Vernon 1981); *Aguilar v. State*, 26 S.W.3d 901, 903 (Tex.Crim.App.2000). The exception in 36.09 pertinent to this appeal calls for a mandatory severance when the evidence establishes that a joint trial would be prejudicial to any defendant.[2] *Id.*

A trial court abuses its discretion when a defendant files a timely motion to sever and presents evidence that a joint trial would be prejudicial. *Id.; Snow v. State*, 721 S.W.2d 943, 945 (Tex.App.— Houston [1st Dist.] 1986, no pet.). Absent evidence of prejudice to one defendant in a joint trial, or evidence that one of the defendants has a prior admissible conviction, a motion for severance is left to the trial court's discretion. *See Patterson v. State*, 783 S.W.2d 268, 270 (Tex.App.— Houston [14th Dist.] 1989, pet. ref'd); *see also King v. State*, 17 S.W.3d 7, 17 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Silva v. State*, 933 S.W.2d 715, 718 (Tex.App.—San Antonio 1996, no pet.). When an accused is not entitled to a severance as a matter of right, the denial of a

---

**2.** The other exception occurs when one of the defendants has a previous admissible conviction. Then severance of that defendant is mandatory. *Id.; Loveless v. State*, 800 S.W.2d 940, 945 (Tex.App.—Texarkana 1990, pet. ref'd). That exception is not implicated in this case.

severance motion by the trial court constitutes an abuse of discretion only when the movant satisfies the "heavy burden" of showing "clear prejudice." *See Patterson,* 783 S.W.2d at 270. Moreover, the mere allegation that prejudice will result is not evidence of, or a sufficient showing of, prejudice under article 36.09, particularly when the severance is discretionary with the trial judge. *See id.*

▮▮▮ In this case, Mendoza asserted at the hearing on his motion to sever that a joint trial would prejudice either defendant because they would present antagonistic defenses. Although the motion was timely, Mendoza did not present any evidence at the hearing. His counsel simply told the judge that he anticipated that the co-defendants would be presenting antagonistic defenses.[3] Neither defense attorney presented evidence of alibi defenses at the pre-trial hearing. When the court asked for legal authority to support the severance motion, counsel offered nothing other than to apprise the court that it had the discretion to grant the motion. Events at trial cannot become the basis for showing that the trial court abused its discretion before trial, unless the trial court was presented with evidence, before trial, indicating that the prejudicial events might occur. *See Fisher v. State,* 681 S.W.2d 202, 206 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). An accused must apprise the trial court of exactly what the inconsistent defenses will be, or what other reason for prejudice exists. Proof that would demonstrate differing degrees of culpability among the defendants is not enough to warrant separate trials. Instead, the co-defendants' positions must be "mutually exclusive" in the sense that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other. *See Silva v. State,* 933 S.W.2d 715, 719 (Tex.App.—San Antonio 1996, no pet.). Where the motion to sever is not supported by evidence, no abuse of discretion is demonstrated and, therefore, its denial is not an abuse of discretion. *See Sanne v. State,* 609 S.W.2d 762 (Tex.Crim.App. 1980); *Silva,* 933 S.W.2d at 718.

▮▮▮ However, the court of criminal appeals now recognizes that the trial court has a continuing duty to order a severance after trial begins upon a showing of sufficient prejudice. *See Aguilar,* 26 S.W.3d at 909. Therefore, once the trial court has been alerted by a timely pre-trial motion to the potential for prejudice in a joint trial, *Aguilar* implies that reconsideration of the previously filed severance motion during the trial will be considered timely. *See id.* In the absence of authority to the contrary, we hold that the burden to reurge a motion for severance lies with the counsel of the affected party. In this case, one judge heard the pre-trial severance motion and a visiting judge presided at trial on the merits. While we do not doubt that the visiting judge prepared for trial by reviewing the motions and orders which shaped this case for trial on the merits, it is the trial counsel who is best prepared to bring clear evidence of prejudice to the court's attention by reurging the motion to sever as necessary and at the earliest opportunity.

---

3. With few exceptions, unsworn statements by an attorney are not "evidence." *See, e.g., Lott v. City of Fort Worth,* 840 S.W.2d 146, 150 (Tex.App.—Fort Worth 1992, no writ) (holding that generally an unsworn statement by counsel is not evidence in the context of a *Batson* hearing); *but see Peterson v. State,* 961 S.W.2d 308, 311 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd)("non-evidence" presented without objection and considered by court becomes "some evidence"). This court has found that the sworn testimony of a defense attorney at a severance hearing was sufficient to demonstrate that prejudice would result if the co-defendants were tried together. *See Silva,* 933 S.W.2d at 719.

In the absence of discovery of another defendant's alibi evidence, we recognize that a co-defendant may have no clear evidence to present to the court at the time the pretrial motion to sever is heard, yet may be harmed by it once the trial unfolds. Mendoza argues that at the trial, each defendant offered conflicting alibi defenses which caused the jury to have to choose between them, thus causing prejudice. Mendoza offered as an alibi that he was jogging at the high school track and he had loaned his car to Aguillon. Aguillon's alibi was that he was attending a high school night class. While these alibis are somewhat conflicting, they are not so antagonistic as to be mutually exclusive defenses. Both defendants asserted that they were elsewhere when the murder occurred. Mendoza testified that he loaned his car to Aguillon and asked him to pick up Joe Martinez that night. Although Martinez, a juvenile, did not testify at the trial, the jury was aware that he had reported the murder to the law enforcement authorities. Aguillon did not testify and the defensive evidence he presented did not necessarily inculpate Mendoza. It was possible for the jury to believe one or both of the alibis or believe neither one. In this case, the jury believed Aguillon's witnesses but did not believe Mendoza.

 Like Texas, federal jurisdictions favor joint trials and provide considerable latitude to the trial court to fashion a fair trial for co-defendants. Mutually antagonistic defenses are not prejudicial *per se*. *See United States v. Quintero*, 38 F.3d 1317, 1339 (3d Cir.1994), *cert. denied*, 513 U.S. 1195, 115 S.Ct. 1263 (1995). To reach that level, the interests of each defendant must aspire to undermine the other's position or to be in such a position as to be comparable to that of the prosecutor. *See Goode v. State*, 740 S.W.2d 453, 460 (Tex.Crim.App.1987); *De Grate v. State*, 518 S.W.2d 821, 822 (Tex.Crim.App. 1975). Only where there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," is a severance mandated. *Quintero*, 38 F.3d at 1339. In this case, Aguillon did not testify against Mendoza, so that Mendoza, in turn, would be forced to waive his Fifth Amendment right not to testify in his own defense. Rather, it was Mendoza who took the stand presumably in an attempt to counter the damaging evidence of his previously admitted confessions.

We find no error in the denial of the pretrial motion to sever. The motion was never reurged during the trial, but even if the trial court had an obligation to reconsider the motion, *sua sponte*, we do not believe that the evidence before the court presented a prejudicial conflict such that it compromised Mendoza's right to a fair trial. The defenses presented were somewhat antagonistic, but were not mutually exclusive. Accordingly, appellant's first issue is overruled.

### JURY INSTRUCTION

Mendoza also asserts that the court erred when it denied most of a proposed jury instruction concerning his confession. The proposed instruction was composed of four paragraphs intended to advise the jury (1) of the general law on voluntariness; (2) to disregard the confession if they believed Mendoza had not freely, voluntarily, intelligently and knowingly waived his right to counsel before making the statement; (3) to disregard the confession if they believed that the investigator had induced the confession by telling Mendoza it could be used "for" him; and (4) to disregard the confession if Mendoza was threatened, coerced, or put under duress by an officer, or was prevented from con-

tacting an attorney. The State objected that paragraphs 2–4 impermissibly commented on the weight of the evidence. The court granted the first paragraph concerning the law of voluntariness, and denied the remaining three paragraphs. Mendoza preserved error by objecting to the charge as given to the jury.

■■■■■ To determine whether a particular jury charge constitutes reversible error, we apply the following standard of review:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be some harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.... [T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on rehearing); *see* TEX CRIM. PROC.CODE ANN. art. 36.19 (Vernon 1981).

■■■■ Taking each paragraph of the proposed instruction in turn, we review the basis for requesting the second paragraph on voluntariness—Mendoza's claim that he was denied the benefit of counsel prior to making his confession. The jury heard conflicting evidence on this issue. Appellant testified that following his arrest he repeatedly requested an attorney. The two investigating officers denied that Mendoza ever requested an attorney prior to making his statement. They also testified that they read Mendoza his right three times between his arrest and his execution of the written statement and that he voluntarily waived those rights.

Requested paragraph three of the proposed instruction relates to Mendoza's claim that the investigator, Zapata, had induced the confession by telling Mendoza it could be used "for" him. Mendoza testified that Zapata suggested that if he confessed, he would be helping himself. Zapata testified that he told Mendoza he could help himself by making "something wrong right." Zapata denied promising a reduction in sentence in return for a confession. The case Mendoza relies on is a pre-*Miranda* case, *White v. State,* which found error where the defendant testified he was advised that if he made a statement, it could be used "for or against" him and the court did not instruct the jury appropriately. *See White v. State,* 163 Tex.Crim. 77, 289 S.W.2d 279, 280–81 (1956). The court held that where there was a fact issue raised as to whether White had been so admonished or advised, the jury should have been instructed to disregard the confession if it believed the defendant's version of the admonishment. *Id.*

The fourth paragraph of the requested instruction would have advised the jury to disregard the confession if they believed it was coerced. Mendoza testified that he first asked for an attorney while sitting handcuffed in the patrol car, and in response, Ranger Holdridge slammed the car door shut. Mendoza testified he was threatened with the death penalty. Holdridge denied he made such a threat but admitted telling Mendoza that the death penalty was a possibility for the crime charged. Holdridge also denied that Mendoza ever requested a lawyer in his presence. And although Holdridge stated he did not have a clear recollection of the

interview, because he conducts so many of them, he did recall that Mendoza was soft-spoken and well-mannered during the interview and Holdridge did not need to raise his voice to try to intimidate him or make Mendoza talk. "He was talking to me freely as it was." Webb County Investigator Zapata testified that Mendoza had been told that others had given statements about the murder. Both officers denied using "cuss words" to intimidate Mendoza.

The admissibility of the confession was determined at a pre-trial suppression hearing and that ruling is not challenged on appeal. The jury instruction given on voluntariness, the first paragraph of the appellant's proposed instruction, tracks the language used in article 38.21 of the code of criminal procedure. TEX.CRIM. PROC. CODE ANN. art. 38.21 (Vernon 1979); *see also* McCLUNG & CARPENTER, TEXAS CRIMINAL JURY CHARGES, at 346 (1997–98 ed.). That is all that our procedural code requires. *See* TEX.CRIM. PROC.CODE ANN. art. 38.22, § 7 (jury to be instructed generally on the law pertaining to statement); *White v. State*, 779 S.W.2d 809, 827–28 (Tex. Crim.App.1989) (38.22 does not contemplate submission of every technical or mechanical aspect of disputed issue). The three rejected fact specific paragraphs on the proposed instruction went beyond a general instruction on the law of voluntariness and amounted to a comment on the weight of the evidence. *See Penry v. State*, 903 S.W.2d 715, 748 (Tex.Crim.App. 1995); *White*, 779 S.W.2d at 828; *Gutierrez v. State*, 945 S.W.2d 287, 291(Tex.App.—San Antonio 1997, no pet.). There is no showing of harm when a proper instruction is given and an improper instruction is rejected.

1. Although our record does not contain a notice of non-suit, both parties agree in their briefs that the appellants non-suited Landstar

Appellant's issues are overruled and the judgment of the trial court is affirmed.