Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



SATURNINO SALGADO VARGAS,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00021-CR

Appeal from the

194th District Court

of Dallas County, Texas

(TC# F-0247892-VM)




O P I N I O N

            This is an appeal from a conviction for the unlawful possession with the intent to deliver
more than 400 grams of a controlled substance. A jury found Appellant guilty and the trial court
assessed his punishment at twenty years of imprisonment and a fine of $2,500. We affirm the
judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
            After being arrested during the investigation of a drug case, Consuelo Jimenez became a
confidential informant for the Dallas Police Department in order to “work off” her case. In late
January or early February of 2002, Jimenez ran into Salgado J. Olivo Teran, an old friend known to
her as “Manuel.” Jimenez testified that she knew Teran was in the drug trade, so she asked him if
he knew where she could buy some drugs. While Teran’s immediate response is unclear, he
eventually set up a deal for three pounds of methamphetamine at $4,500 per pound through a third
party supplier/seller.
            The Dallas Police Department, through Jimenez, arranged for the deal to take place on
February 6, 2002 in a local K-Mart parking lot. Police officers and DEA agents had arranged for the
parking lot to be videotaped and had also positioned themselves to observe the transaction. They
observed Teran make initial contact with Saturnino Vargas, Appellant, inside the K-Mart. After this
initial contact, Teran returned to Jimenez, who was waiting in her truck. Jimenez and Teran then
entered K-Mart together to speak with Appellant. DEA agents followed Teran and Jimenez into K-Mart and observed their conversation with Appellant but did not understand what they were saying. 
All three eventually exited the K-Mart and entered Appellant’s vehicle. After seeing the three
pounds of methamphetamine inside the vehicle, Jimenez called a DEA agent who was acting as her
cousin and told him to bring the money. At that moment, the police surrounded the vehicle, arrested
Appellant, Teran, and Jimenez (to protect her cover), and seized the methamphetamine.
            Teran, testifying on his own behalf, claimed that he initially rejected Jimenez’s request to
help her buy drugs, but that he eventually agreed to help because she repeatedly insisted and because
they were good friends. That is also why he went with Jimenez on the day of the deal and why he
went inside the K-Mart to meet Appellant. Once inside, he identified Appellant based on a
description that he had been given of the clothes of the person he was to meet. He claimed that this
was the first time he had ever seen Appellant In fact, Teran admitted that he never knew whether
Appellant was the one with whom he was speaking when he made the phone calls to arrange the
transaction. At no time inside K-Mart did he speak with Appellant about a drug transaction. When
the time came to get into Appellant’s vehicle, Teran complied only because Jimenez told him to. 
He saw the drugs for the first time while inside the vehicle.
            Appellant and Teran were both indicted for the offense of possession with intent to deliver
a controlled substance and were tried jointly. The jury found Appellant guilty of the offense, while
finding Teran not guilty.
II. DISCUSSION
            In Issues Nos. One through Three, Appellant contends that the State impermissibly used three
of its peremptory strikes in a racially discriminatory manner and that the trial court erred in
overruling his challenges to these strikes.
            At the conclusion of voir dire and after both sides exercised their peremptory strikes,
Appellant objected to the State’s use of peremptory strikes to strike jurors 16, 19, and 30, three
Hispanic venire members. Appellant did not see any potential disqualifications in these members
and demanded a race-neutral explanation. In response, the prosecution first noted that three other
venire members with Hispanic surnames were not struck and then proceeded to provide explanations
for why jurors 16, 19, and 30 were struck. According to the prosecution, jurors 16 and 30 failed to
complete their juror information cards and the portions they did fill out included misspelled words.
The prosecution struck juror 19 because she had “commented on the record that she was extremely
tired from traveling and slept through majority of the voir dire. As well as the fact that there were
some comments she made during questioning by the Defense that showed that she would increase
the burden against the State to a hundred percent burden.” The defendant made no response. Based
on these explanations, the trial court rejected Appellant’s Batson challenge.
            Criminal defendants are entitled to trial by a jury selected in a non-discriminatory manner. 
Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); see also Tex.Code
Crim.Proc.Ann. art. 35.261 (Vernon 1989). Thus, a party is prohibited from using peremptory
strikes in a racially discriminatory manner. Batson, 476 U.S. 79, 89. Advancing a Batson challenge
is a three step process. First, the objecting party, usually the defendant, must make a prima facie
showing of discrimination. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d
834 (1995). Second, the State must provide a race-neutral explanation for the strike. Purkett, 514
U.S. at 767. A race-neutral explanation is one in which there is no inherent discriminatory intent,
regardless of how fantastic, implausible, or unpersuasive the explanation is. Id. at 768. Third, if a
race-neutral explanation is given, the defendant bears the burden of persuading the trail court of
purposeful discrimination. Johnson v. State, 68 S.W.3d 644, 649 (Tex.Crim.App. 2002); Davis v.
State, 822 S.W.2d 207, 210 (Tex.App.--Dallas 1991, pet. ref’d). The defendant must show that the
race-neutral explanation offered by the State was merely a pretext for discrimination. Johnson, 68
S.W.3d at 649; Bausley v. State, 997 S.W.2d 313, 316 (Tex.App.--Dallas 1999, pet. ref’d). It is not
enough for the defendant to simply state his disagreement with the State’s explanations. Davis, 822
S.W.2d at 210. 
            When reviewing a Batson challenge, the trial court’s ruling is afforded great deference and
will not be overturned on appeal unless it is clearly erroneous. Jasper v. State, 61 S.W.3d 413, 422
(Tex.Crim.App. 2001). We will not reverse a trial court’s Batson decision unless we are left with
a firm conviction that a mistake was committed. Guzman v. State, 85 S.W.3d 242, 254
(Tex.Crim.App. 2002); Ramirez v. State, 976 S.W.2d 219, 225 (Tex.App.--El Paso 1998, pet. ref’d).            On appeal, Appellant claims that the reasons given by the prosecutor for striking jurors 16,
19, and 30 are not race-neutral. The prosecution’s stated reasons were that jurors 16 and 30 did not
fill out completely the juror information cards and that the portions they did fill out had misspellings
while juror 19 slept during voir dire and indicated that she would hold the prosecution to a 100
percent burden. There is no discriminatory intent inherent in striking someone for incompletely
filling out the juror information card or misspelling words. Nor is there discriminatory intent
inherent in striking someone for sleeping or for requiring the state to meet a higher burden than
reasonable doubt. These are race-neutral explanations. See Satterwhite v. State, 858 S.W.2d 412,
423 (Tex.Crim.App. 1993)(failing to complete juror information card is a race-neutral justification
for striking juror); Roy v. State, 813 S.W.2d 532, 538 (Tex.App.--Dallas 1991, pet. ref’d)(failing to
complete juror information card is a race-neutral justification for striking juror); Hastings v. State,
755 S.W.2d 183,186 (Tex.App.--San Antonio 1988, pet. ref’d)(failing to spell words correctly is a
race-neutral justification); Ivatury v. State, 792 S.W.2d 845, 847-48 (Tex.App.--Dallas 1990, pet.
ref’d)(falling asleep is a race-neutral justification); Hernandez v. State, 808 S.W.2d 536, 544
(Tex.App.--Waco 1991, no pet.)(holding the State to a higher burden of proof is a race-neutral
justification). Therefore, Appellant had the burden of showing that these reasons were merely
pretextual. He failed to meet this burden. Appellant offered no proof that the State’s race-neutral
explanations for striking the veniremen were a pretext for discrimination. He did not cross-examine
the prosecutor, offer any additional evidence, nor even state disagreement with the prosecutor’s
explanations. There is nothing in the record to indicate that the trial court made a mistake. We
therefore hold that the trial court’s ruling was not clearly erroneous and overrule Issues Nos. One
through Three in their entirety.
            In Issue No. Four, Appellant argues that the trial court abused its discretion by denying his
motions to sever. We disagree.
            Prior to voir dire, Appellant asked for a severance on the grounds that he anticipated evidence
of different degrees of culpability for the codefendants. He also felt that he would be prejudiced
because, in the event the defendants were found guilty, he would have the court decide his
punishment while the codefendant would have the jury decide his punishment and this could be seen
somehow as an admission of guilt. The court denied the motion.
            Upon learning that Teran was going to testify, Appellant again moved to sever, this time on
the grounds that Teran was going to testify while Appellant was going to invoke his constitutional
right not to testify. Appellant was concerned that the jury would note the difference and that this
would prejudice his case. Appellant also expressed a concern that Teran would present an
entrapment defense, thereby admitting guilt and causing prejudice to Appellant’s case by implicating
him in the crime. The court chose to carry the motion.
            After Teran’s testimony, Appellant re-urged his motion for severance claiming that his case
was prejudiced because Teran had raised a “quasi entrapment” defense. The court indicated that it
would “give it a lot of thought.” The next day, Appellant made another motion to sever. Appellant
felt that Teran’s testimony amounted to a “quasi entrapment” defense in which he admitted his
involvement and in the process implicated Appellant. Appellant felt he could no longer receive a
fair trial. The State responded by arguing that Teran’s testimony was no surprise. The phone records
and video tapes all told the same story that Teran told. The State also insisted that this was not a
case of inconsistent defenses and that Appellant “should not receive the benefit of having heard and
basically had the opportunity to cross-examine all the witnesses to this point.” The court denied the
motion and then allowed counsel for Appellant to cross-examine Teran.
            Severance is mandatory when, upon a timely motion, evidence is introduced which
establishes that a joint trial would be prejudicial to any defendant. Tex.Code Crim.Proc.Ann.
art. 36.09 (Vernon 1981); Aguilar v. State, 26 S.W.3d 901, 909 (Tex.Crim.App. 2000). The trial
court has considerable discretion in deciding whether a joint trial would be so prejudicial to a
particular defendant as to warrant a severance. Simon v. State, 743 S.W.2d 318, 322 (Tex.App.--Houston [1st Dist.] 1987, pet. ref’d). We therefore review a trial court’s denial of a motion to sever
under an abuse of discretion standard. Mendoza v. State, 61 S.W.3d 498, 502 (Tex.App.--San
Antonio 2001, pet. ref’d); Olivares v. State, 785 S.W.2d 941, 944 (Tex.App.--El Paso 1990, no pet.).
            To establish an abuse of discretion, the defendant has the heavy burden of showing clear
prejudice. Peterson v. State, 961 S.W.2d 308, 310 (Tex.App.--Houston [1st Dist.] 1997, pet. ref’d). 
The mere allegation of prejudice is not a sufficient showing of prejudice to warrant a severance;
evidence must be offered in support of the motion. Mulder v. State, 707 S.W.2d 908, 915
(Tex.Crim.App. 1986). Proof that the defendants have different levels of culpability is not enough
to establish that separate trials are required. Silva v. State, 933 S.W.2d 715, 719 (Tex.App.--San
Antonio 1996, no pet.). Instead, the co-defendants’ positions must be mutually exclusive such that
for the jury to believe the core of one defense, it must necessarily disbelieve the core of the other. 
Id. It is not enough for a co-defendant to claim prejudice based on inconsistent or conflicting
testimony generally. Instead, he must specifically state what the inconsistent defenses are. Id.
            Because evidence of different degrees of culpability is not sufficient to require separate trials,
Appellant is left with three claims: (1) that he was prejudiced by the fact that he had elected to have
the court set punishment while Teran chose the jury, (2) that he was prejudiced by Teran’s choice
to testify while Appellant remained silent, and (4) that he was prejudiced by the content of Teran’s
testimony, particularly by Teran’s use of a “quasi entrapment” defense. The first of these claims is
without merit. During voir dire, the jury was informed that defendants have a right to choose who
will decide their punishment and that the decision must be made prior to trial. They were informed
of the penalty range set by the legislature for the offense. They were also informed that two
independent cases were involved, each requiring individual consideration. Absent any specific
evidence, there is no reason to doubt the ability of the jury to understand these concepts or follow
these directions. The same holds true for the argument that the Appellant was prejudiced by Teran’s
choice to testify. During voir dire and in the charge to the jury, the jury was instructed that they
could not hold the exercise of the right not to testify against a defendant. Again, absent specific
evidence, there is no reason to doubt the ability of thee jury to follow these directions. 
            The argument that Appellant was prejudiced by the content of Teran’s testimony is equally
without merit. Appellant argues that Teran’s testimony implicated him as the perpetrator of the
crime and that this mandates severance. To support this position, Appellant relies on Chavez v.
State, 6 S.W.3d 56, 62 (Tex.App.--San Antonio 1999, pet. ref’d). However, Chavez dealt with a
non-testifying co-defendant’s written confession that implicated the defendant. Id. This situation
mandates severance because it violates a defendant’s Sixth Amendment right to confront witnesses
against him. Id. Here, the co-defendant testified and was cross-examined by the counsel for
defendant, so Chavez does not apply. Nor is it clear that Teran’s testimony implicated Appellant to
a greater extent than testimony already before the jury. Teran testified that he did not know
Appellant, that he was not sure it was Appellant he spoke with on the telephone, and that he never
spoke with him about a drug transaction at the K-Mart. Importantly, Teran did not testify that the
drugs found in the vehicle were placed there by Appellant or that Appellant had any knowledge of
them. In effect, his testimony simply established the presence of Appellant, a fact that was attested
to by the informant, the police officers, the DEA agents, and the video tape. It seems that Teran’s
testimony added little in the way of evidence against Appellant. What it did contribute does not rise
to the level of clear prejudice.
            Finally, although the argument is not clear, Appellant suggests that Teran’s “quasi
entrapment” defense, by admitting involvement in the drug transaction, was incompatible with his
own defense and that this established grounds for a severance. However, Appellant did not
presented any evidence showing the nature of the incompatibility or point to any specific
inconsistencies. Teran testified that he participated in the transaction because the confidential
informant told him to and that Appellant was the person they met at the K-mart. Appellant, on the
other hand, did not testify or present any defensive evidence, so it cannot be said that his defense was
incompatible with Teran’s or that their defenses were mutually exclusive. See Robertson v. State,
632 S.W.2d 805, 808 (Tex.App.--Houston [14th Dist.] 1982, no pet.).
            Because Appellant did not establish that a joint trial would cause clear prejudice, he has
failed to meet the heavy burden required to establish an abuse of discretion. We therefore overrule
Issue No. Four.
            Having overruled each of Appellant’s issues on review, we affirm the judgment of the trial
court.


December 16, 2004                                                                 
                                                                                                 RICHARD BARAJAS, Chief Justice

Before Panel No. 4
Barajas, C.J., Larsen and McClure, JJ.

(Do Not Publish)