COURT OF APPEALS

















COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

KEVIN BOYER,                                                  )

                                                                              )              
No.  08-04-00350-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
346th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20020D04178)

                                                                              )

 

 

O
P I N I O N

 

Kevin Boyer
appeals his conviction for capital murder. 
A jury found him guilty and the trial court sentenced Appellant to life
imprisonment.  Appellant raises two
issues on appeal:  (1) whether the trial
court erred in denying his pretrial motion to suppress his written confession
because the initial arrest warrant was based on a deficient complaint
affidavit; and (2) whether the trial court erred in refusing his requested jury
charge instruction as to whether he voluntarily waived his rights in accordance
with Article 38.22 of the Texas Code of Criminal Procedure.  We affirm.








On August 19,
2001, the body of Ismael Navarro was discovered in a dumpster in the  alleyway next to the First
Trinity United
Methodist Church
in El Paso, Texas. 
Officer David Samaniego obtained an arrest warrant for Appellant on the
night of August 21, 2001.  Around 11:20
p.m., Officer Samaniego contacted Detective Gonzalo Chavarria by phone and
advised him that the warrant had been obtained. 
Detective Chavarria had been surveilling Appellant=s residence at the Sunset Hotel waiting
for unit detectives to obtain the arrest warrant.  About ten minutes later, Detective Chavarria
and other officers executed the warrant and arrested Appellant for murder.[1]  Appellant was taken to the Crimes Against
Persons (ACAP@) office at the El Paso Police
Department.  Sergeant Adrian Medina meet
with Appellant at police headquarters at approximately 11:55 p.m.  Sergeant Medina testified that he advised the
Appellant of his Miranda rights and between 12:02 a.m. and 3:30 a.m., he
obtained Appellant=s
voluntary statement, confessing to the murder.

Appellant first
contends that the trial court erred in not suppressing his written statement
because the initial arrest warrant was illegal because it was based on a
deficient complaint affidavit. 
Specifically, he complains that the affidavit failed to specify the
source of the information, whether the source was credible, and whether any of
the information had been substantiated.

Standard
of Review








We review the
trial court=s ruling
on a motion to suppress for an abuse of discretion.  Guzman v. State, 955 S.W.2d 85, 88-9
(Tex.Crim.App. 1997).  Under this
standard, we give almost total deference to the trial court=s determination of historical facts
supported by the record, especially when the findings are based on an
evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  We review de novo mixed
questions of law and fact that do not turn on an evaluation of credibility and
demeanor.  Id.; Balentine v. State, 71
S.W.3d 763, 768 (Tex.Crim.App. 2002). 
When the trial court does not make explicit findings of fact, we review
the evidence in a light most favorable to the trial court=s ruling.  Carmouche v. State, 10 S.W.3d 323,
327-28 (Tex.Crim.App. 2000).  The trial
court=s ruling
will be upheld if it is reasonably supported by the record and is correct on
any theory of law applicable to the case. 
State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

Probable
Cause Affidavit

An affidavit in
support of an arrest warrant must show probable cause that an offense has been
committed and probable cause that the person named in the affidavit committed
the offense.  Belton v. State, 900
S.W.2d 886, 893 (Tex.App.--El Paso 1995, pet. ref=d);
see also Tex.Code Crim.Proc.Ann.
art. 15.05 (Vernon 2005).  The
information contained in the affidavit may be based on either direct personal
observations of the affiant or on hearsay information.  Belton, 900 S.W.2d at 893, citing
Aguilar v. Texas, 378 U.S. 108, 114,
84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964).  Whether an affidavit in support of an arrest
warrant is sufficient to show probable cause must be determined from the four
corners of the affidavit itself.  Belton,
900 S.W.2d at 893, citing Tolentino v. State, 638 S.W.2d 499, 501
(Tex.Crim.App. 1982); Miller v. State, 736 S.W.2d 643, 647
(Tex.Crim.App. 1987).  Affidavits must be
interpreted in a common sense and realistic manner and the magistrate who
reviews an affidavit may draw inferences from the facts contained in it.  Belton, 900 S.W.2d at 893, citing
Gibbs v. State, 819 S.W.2d 821, 830 (Tex.Crim.App. 1991).








The reviewing
court determines whether the affidavit contained sufficient probable cause
under the Atotality
of the circumstances@
test.  See Illinois
v. Gates, 462 U.S.
213, 228-31, 103 S.Ct. 2317, 2327-28, 76 L.Ed.2d 527 (1983); Bellah v. State,
653 S.W.2d 795, 796 (Tex.Crim.App. 1983). 
Credibility, reliability, and basis of knowledge no longer need to be
established by separate and independent facts; however, they remain highly
relevant factors in determining, by the totality of the circumstances, whether
probable cause exists.  Eisenhauer v.
State, 754 S.W.2d 159, 164 (Tex.Crim.App. 1988).  A magistrate=s
determination of probable cause should be given great deference by reviewing
courts.  See Swearingen v. State,
143 S.W.3d 808, 811 (Tex.Crim.App. 2004); see also Gates, 462 U.S. at 236-37,
103 S.Ct. at 2331.  

Here, Detective
David Samaniego=s
complaint affidavit in support of the initial arrest warrant stated, inter
alia:

Detective David Samaniego #1512, who
after being by me duly sworn, on oath deposes and says that he has good reason
to believe and does believe that heretofore to wit, on or about the 18th day of
August, 2001 and before the filing of this Complaint in the County of El Paso,
the State of Texas, one Kevin L. Boyer (DOB 6-13-72), hereinafter called
DEFENDANT, did then and there unlawfully, intentionally and knowingly causes
[sic] the death of an individual, 
to-wit; Ismael Navarro.

 

Affiants [sic] belief is based on the
following,

 

Affiant is in possession of police
reports, witness statements and two voluntary statements of accused alleging
the following.  On 8-18-01 at
approximately 10:00P, Ismael Navarro accompanied defendant Boyer along with two
individuals as they walked through the parking lot of the Trinity 1st United
Methodist Church located at 810 N. Oregon. 
Defendant Boyer began assaulting Ismael Navarro by punching and kicking
him about the entire body and causing Ismael Navarro to fall onto the
pavement.  Defendant Boyer then placed
Ismael Navarro within a trash receptacle. 
The body of Ismael Navarro was discovered within the trash receptacle on
8-19-01 at approximately 7:30A. 
Preliminary autopsy results indicate that Ismael Navarro died of
multiple blunt force trauma.  This
offense is said to have occurred on 8-18-01 in the County
of El Paso, the State of Texas.








Appellant
complains that it is impossible to tell from the four corners of the affidavit
whether the source or sources of information are accurate and reliable because
the allegations concerning his alleged actions are not attributed to any
specific person or source.  Detective
Samaniego=s
affidavit, however, indicates that his allegations are based on information
obtained from police reports that were derived from the investigation.  A magistrate is entitled to rely upon
information supplied by a police officer=s
own observations and upon information supplied by fellow officers engaged in a
common investigation.  Ashcraft v.
State, 934 S.W.2d 727, 733 (Tex.App.--Corpus Christi 1996, pet. ref=d), citing Johnson v. State,
803 S.W.2d 272, 289 (Tex.Crim.App. 1990).








The affidavit also
identifies Atwo
voluntary statements of accused@
as sources of information, without specifically naming the individual or
individuals.  A magistrate is permitted
to make reasonable inferences from the facts set forth in the affidavit.  See Gibbs v. State, 819 S.W.2d 821,
830 (Tex.Crim.App. 1991); Gish v. State, 606 S.W.2d 883, 886
(Tex.Crim.App. 1980).  In this case, the
magistrate could have reasonably inferred from the facts in the affidavit, that
the voluntary statements of the Aaccused,@ referred to Appellant and or one or
both of the individuals who were accompanying Appellant on the night of August
18, 2001 and were witnesses to the assault. 
Where the victim or eyewitness to the offense is the direct source of
the information conveyed to the magistrate via a police officer, neither facts
independently corroborative of the occurrence nor the basis for the claimed
reliability of the eyewitness need be recited. 
Belton, 900 S.W.2d at 894. 
Further, the preliminary autopsy results indicated that the decedent
died from multiple blunt force trauma, which is consistent with the manner of
the assault.  Therefore, we disagree with
Appellant=s
contention with regard to the unnamed sources of information in the affidavit.

Appellant also
complains that the affidavit failed to provide sufficient information that led
the officer to form his conclusion that Appellant killed the decedent.  Ergo, the affidavit did not provide a
substantial basis for the magistrate to determine whether probable cause
existed.  Factual allegations in an
affidavit are sufficient if they permit the reasonable and logical inference of
a nexus between the Appellant and the crime charged.  See Gibbs, 819 S.W.2d at 830.  On the other hand, an affidavit which
contains a mere conclusory allegation is insufficient to establish probable
cause.  See Miller, 736 S.W.2d at
647.

In reviewing the
affidavit, we observe that based on the police investigation, witness
statements, and the two voluntary statements, Detective Samaniego detailed the
following facts to support the issuance of the arrest warrant: 

(1)        On the night of August 18, 2001, the
decedent accompanied Appellant and two other individuals, as they walked
through the parking lot of the Trinity
 First United
 Methodist Church;

 

(2)        Appellant began assaulting the decedent
by punching and kicking him about the entire body and caused him to fall onto
the pavement;

 

(3)        Appellant then placed the decedent in a
trash receptacle, where the decedent was discovered on the morning of August
19, 2001; and 

 

(4)        Preliminary autopsy results indicate
that the decedent died of multiple blunt force trauma. 

 








The affidavit in
this case sufficiently detailed the facts, which were either told directly to
Detective Samaniego or to other police officers involved in the investigation,
in support of the detective=s
conclusion that Appellant had committed this particular offense.  Therefore, we conclude that the affidavit for
the initial arrest warrant contained sufficient facts from which the magistrate
could have found probable cause. 
Moreover, we conclude that under the totality of the circumstances, the
magistrate had a substantial basis for concluding there was probable cause to
issue the arrest warrant.

However, even if the
initial arrest warrant was invalid as Appellant claims, we would still conclude
that the trial court did not err in denying Appellant=s
motion to suppress his written statement because there was sufficient attenuation
of any taint from the illegal arrest. 
When the affidavit supporting an arrest warrant is insufficient, the
question is then whether the resulting taint on the evidence was attenuated,
such that the evidence was admissible notwithstanding the illegal arrest.  Hankins v. State, 132 S.W.3d 380, 389
(Tex.Crim.App. 2004), cert. denied, 543 U.S. 944, 125 S.Ct. 358, 160
L.Ed.2d 256 (2004).  In assessing whether
the taint on the evidence is sufficiently attenuated, we consider the following
four factors:

(1)        whether Miranda[2]
warnings were given;

 

(2)        the temporal proximity of the arrest and
the confession;

 

(3)        the presence of intervening
circumstances; and

 

(4)        the purpose and flagrancy of the
official misconduct.

 

Id.;
see also Brown v. Illinois, 422 U.S. 590,
603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975).








Here, Detective
Medina testified at the suppression hearing that before conducting the oral
interview, he read the Miranda warnings to Appellant and that Appellant
read them back to him and initialed each right and signed the Miranda
warning card.  The Miranda
warnings were also at the beginning of his written statement, which was signed
by Appellant.  This factor weighs in
favor of the State.

With regard to the
second factor, the temporal proximity of the arrest and the confession, the
record shows that Appellant was arrested at approximately 11:30 p.m. and was
immediately taken to the CAP office at police headquarters.  Appellant was advised of his Miranda
rights and signed the warning card at 12:02 a.m.  Detective Medina recalled that he began taking
Appellant=s written
statement at 1:20 a.m.  Appellant signed
his written statement at approximately 3:30 a.m., four hours after his initial
arrest.  The second factor tends to favor
Appellant.  See Bell v. State, 724
S.W.2d 780, 788-89 (Tex.Crim.App. 1986)(finding that a lapse of between
one-and-a-half to three hours favored the defendant).








In Appellant=s brief, he asserts that there were no
intervening circumstances between his arrest and the taking of his written
statement.  However, at the suppression
hearing Detective Charlie Ortega testified that he obtained a search and arrest
warrant, authorizing Appellant=s
arrest and the search of his residence, at 12 a.m.  Appellant has not challenged the validity of
this subsequent warrant.  Significant
intervening circumstances include an appearance before a magistrate,
termination of the illegal custody, consultation with counsel, voluntary
statement not made in response to police interrogation, consultation with
parents, and the procurement of a valid arrest warrant before the
confession.  Weems v. State, 167
S.W.3d 350, 360 (Tex.App.--Houston [14th Dist.] 2005, pet. ref=d). 
Here, the subsequent procurement of a valid arrest warrant prior to
Appellant=s
confession was a significant intervening circumstances and is a relevant factor
in our analysis.  See Johnson v. State,
871 S.W.2d 744, 751 (Tex.Crim.App. 1994) (subsequent procurement of an arrest
warrant during interrogation that was conducted after an illegal arrest
constitutes an intervening circumstance under Brown analysis); Bell, 724 S.W.2d
at 791 (subsequent procurement of a proper arrest warrant severed the causal
relationship between the illegal arrest and resulting evidence).  We conclude that this factor favors the
State.  

In the final
factor, we consider the purpose and flagrancy of the misconduct by the
police.  Official misconduct has been
found when the arrest:  (1) was without
probable cause; (2) was calculated to cause surprise, fright, and confusion;
and (3) was conducted purely in hope that something would turn up.  Weems, 167 S.W.3d at 361.  Other examples of official misconduct include
making an arrest that is unnecessarily intrusive on personal privacy and
subjecting the defendant to continuous interrogation.  Bell,
724 S.W.2d at 789.

Here, the record
shows that based on the unchallenged subsequent search and arrest, which relied
on the eyewitness statements of two named individuals, the police had probable
cause to arrest Appellant.  There was no
evidence that the officers=
actions were calculated to cause surprise, fright, or confusion.  Detective Gonzalo Chavarria testified that he
was conducting surveillance at the Sunset Hotel when he received a call
advising him that a warrant had been obtained. 
About ten to fifteen minutes later, Detective Chavarria knocked on
Appellant=s door
and after a few knocks, Appellant opened the door.  Detective Chavarria told Appellant he was
under arrest for murder and then directed the two uniformed officers who were
with him to place Appellant into custody. 
Detective Alfonso Navares transported Appellant to the CAP office from
the Sunset Hotel.  Detective Navares
recalled that Appellant appeared calm, awake, and did not appear like someone
who had just been roused from sleep. 
Additionally, there is no evidence to suggest that the arrest was
conducted in the hope that something might turn up in the officers= investigation.  The last factor, therefore, weighs in favor
of the State.








Because Appellant
received repeated Miranda warnings, the police obtained a subsequent
valid arrest warrant before Appellant was interviewed and had signed his
written statement, and the police officers did not act in a flagrantly abusive
or purposeful manner, we find that the Brown factors when considered together,
weight in favor of the State, such that Appellant=s
written statement was not tainted by his alleged illegal arrest.  Therefore, we conclude the trial court did
not abuse its discretion in denying Appellant=s
motion to suppress the evidence.  Issue
One is overruled.

In his second
issue, Appellant argues that the trial court erred in denying his requested
jury instruction on the voluntariness of his written statement pursuant to
Article 38.22 of the Texas Code of Criminal Procedure.

At the charge conference, Appellant
requested the following instruction be given to the jury:

You are instructed that under our law a
confession of a defendant made while the defendant was in jail or other place
of confinement or in the custody of an officer shall be admissible in evidence
if it appears that the statement was freely and voluntarily made without
compulsion or persuasion provided, however, that it be made in writing and
signed by the accused and show that the accused has been warned prior to making
such statement or confession by the person or whom--to whom the statement is
made that, one, he has the right to remain silent and not make any statement at
all and that any statement he makes may be used against him at his trial; two,
any statement he makes may be used as evidence against him in Court; three, he
has a right to have a lawyer present to advise him prior to and during any
questioning; four, he may have his own lawyer or, if he is unable to employ a
lawyer, he has a right to have a lawyer appointed to advise him prior to and
during any questioning and; five, he has the right to terminate the interview
or questioning at any time.

 

So in this case if you
find from the evidence or you have a reasonable doubt thereof that prior to the
time the defendant gave the alleged statement, or confession, to Detective
Medina, if he did give it, the said Detective Medina did not warn the defendant
in the respects just outlined or as to any one of such requirements just
outlined, then you will wholly disregard the alleged statement or confession
and not consider it for any purpose nor any evidence obtained as a result
thereof.

 








If, however, you find
beyond a reasonable doubt that the aforementioned warning was given to the
defendant prior to having made such statement, if he did make it, still before
you may consider such statement as evidence in this case you must find from the
evidence beyond a reasonable doubt that prior to and during such statement, if
any, the defendant knowingly, intelligently and voluntarily waived the rights
hereinabove set out in the said warning. 
And unless you so find, or if you have a reasonable doubt thereof, you
will not consider the statement or confession for any purposes whatsoever or
any evidence obtained as a result of the same.

 

The trial court refused Appellant=s proposed instruction and instead, the
following instruction appears in the charge:

You are instructed that unless you
believe from the evidence beyond a reasonable doubt that the alleged written
confession or statement introduced into evidence was freely and voluntarily
made by the defendant without compulsion or persuasion, or if you have a
reasonable doubt thereof, you shall not consider such alleged written statement
or confession for any purpose nor any evidence obtained as a result thereof.

 

Article 38.22,
section 7 provides that when the voluntariness of a confession is raised by the
evidence, the trial judge shall instruct the jury on the law pertaining to the
statement.  See Tex.Code Crim.Proc.Ann. art. 38.22, ' 7 (Vernon 2005); Muniz v. State,
851 S.W.2d 238, 254 (Tex.Crim.App. 1993). 
The evidence that raises the issue may be strong, weak, contradicted,
unimpeached, or unbelievable.  Mendoza v.
State, 88 S.W.3d 236, 239 (Tex.Crim.App. 2002).  However, before the requested instruction is
required, some evidence must be presented to the jury that raises the
voluntariness issue.  See Butler v. State, 872
S.W.2d 227, 236 (Tex.Crim.App. 1994).

Here, Appellant
argues that the following evidence shows that he did not knowingly and
voluntarily waive his Miranda rights: 
(1) Officer Medina advised Appellant of his Miranda rights within
only a seven-minute period before beginning the interview; (2) Officer Medina 








 

knew that Appellant could read and
understand English and had completed the tenth grade, but did not inquire
further into Appellant=s
background; (3) on cross-examination, Officer Medina testified that he had
formed no opinion as to whether Appellant was sophisticated or not; and (4)
Officer Medina also testified that Appellant was cooperative during the
interview, but did suppose that Appellant may have been scared.

Even assuming that
the above facts alone constitute some evidence that Appellant did not knowingly
and intelligently waive this rights, the trial court did not err in excluding
the proposed instruction.  In Mendoza
v. State, the Court of Criminal Appeals held that the trial court in that case
properly excluded a proposed instruction, which is virtually identical to the
language in the second and third paragraph of Appellant=s
requested instruction.  See Mendoza, 88 S.W.3d at
240.  The Mendoza Court determined that the
specific recitation of facts in such an instruction would have constituted a
comment on the weight of the evidence.  Id. at 240
n.5.  With regard to the first paragraph
of the requested instruction, the trial court in this case provided a general
jury instruction, rather than Appellant=s
more detailed charge.  Because Section 7,
Article 38.22 only requires that a jury be instructed generally on the law of
voluntariness, the trial court did not err in refusing the requested
instruction proposed in Appellant=s
first paragraph and instead providing a general instruction on voluntariness in
the charge.  See Dinkins v. State,
894 S.W.2d 330, 352-53 (Tex.Crim.App. 1995); Mendoza v. State, 61 S.W.3d
498, 505 (Tex.App.--San Antonio 2001), aff=d,
88 S.W.3d 236 (Tex.Crim.App. 2002). 
Thus, we find no error by the trial court and we overrule Issue Two.

 








We affirm the
trial court=s
judgment.

 

August
10, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Subsequent to the initial arrest warrant, Detective Charlie Ortega obtained a
search and arrest warrant at 12 a.m., which authorized the search of Appellant=s motel room and his arrest.  Detective Ortega participated in the
execution of the search, which occurred at approximately 12:45 a.m., and
testified at the suppression hearing that Appellant was not present during the
search.  Appellant does not challenge the
validity of this subsequent search and arrest warrant on appeal.





[2]
Miranda v. Arizona, 384 U.S. 436, 86
S.Ct. 1602, 16 L.Ed.2d 694 (1966).