**Richard CHAVEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00919–CR.**

Court of Appeals of Texas,
San Antonio.

Aug. 4, 1999.

Discretionary Review Refused
Jan. 19, 2000.

58

Richard E. Langlois, Law Offices of Richard E. Langlois, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice SARAH DUNCAN, Justice KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### NATURE OF THE CASE

Richard Chavez was convicted by jury of murder and sentenced to 37 years' imprisonment. Chavez appeals his conviction contending he was denied effective assistance of counsel. Chavez also contends the trial court erred by prohibiting cross examination of Ruben Cuellar during the punishment phase regarding the issue of sudden passion and adequate cause. We affirm his conviction.

### FACTS AND PROCEDURAL BACKGROUND

Richard Chavez attended a New Year's Eve party on the night of December 31, 1994, arriving around 9 p.m. Several of Chavez' friends, including his brother, Mario Chavez, attended the party, which continued well into the early morning hours. The deceased, Richard Cortez, and his friends arrived sometime between 3 a.m. and 4 a.m. Shortly after the group's arrival, a fight ensued between the male members of the two groups. The record contains conflicting testimony as to what happened during the fight. Cortez died as a result of the injuries he received during the melee. Chavez was convicted of murder and now appeals.

### DISCUSSION

In his first point of error, Chavez contends he was denied effective assistance of trial counsel based on multiple grounds.

■ To show ineffective assistance of counsel, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The prejudice prong of the *Strickland* analysis must focus on whether the result of the proceeding was fundamentally unfair or unreliable, rather than solely on mere outcome determination. *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

■ Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance and, on review, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Green v. State*, 899 S.W.2d 245, 248 (Tex.App.—San Antonio 1995, no pet.); *Weeks v. State*, 894 S.W.2d 390, 391 (Tex.App.-Dallas 1994, no pet.). The appellant can rebut this presumption by showing his attorney's performance was unreasonable under prevailing professional norms, and the challenged action was not sound trial strategy. *Green*, 899 S.W.2d at 248; *Weeks*, 894 S.W.2d at 391. Whether the *Strickland* standard has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of the trial counsel, and the test is applied at the time of the trial, not through hindsight. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Banks v. State*, 819

S.W.2d 676, 681 (Tex.App.—San Antonio 1991, pet. ref'd). However, when trial counsel's errors are so fundamental that they cannot be rationally excused as "trial strategy," ineffective assistance of counsel exists. *Green,* 899 S.W.2d at 248.

A record on direct appeal rarely suffices to rebut the strong presumption of sound trial strategy. Consequently, "as a general rule, one should not raise an issue of ineffective assistance of counsel on direct appeal." *Jackson,* 877 S.W.2d at 772 (Maloney, J., concurring). Because an appellate court reviews a trial court record with an eye toward errors allegedly committed in relation to issues of guilt and innocence or punishment, a record related to issues of counsel's performance is best developed in the context of a hearing on application for writ of habeas corpus or motion for new trial. *Id.* at 772–73. When the appellate record contains no evidence of the reasoning behind a trial counsel's action, the reviewing court cannot conclude that counsel's performance was deficient because such determination would be based upon speculation. *Weeks,* 894 S.W.2d at 391. However, when a "silent record" clearly confirms that no reasonable trial counsel could have made such trial decisions, to hold counsel ineffective is not speculation, and this court may review the alleged error. *Id.* at 392; *Vasquez v. State,* 830 S.W.2d 948, 950–51 (Tex.Crim. App.1992)(per curiam).

Chavez did not file a motion for new trial, therefore, the record is silent regarding trial counsel's strategy and reasoning. However, this court will review Chavez' contentions to determine whether the record clearly confirms that no reasonable trial counsel could have made such trial decisions. *See Weeks,* 894 S.W.2d at 392; *Vasquez,* 830 S.W.2d at 950–51.

*Failure to move for severance of trial from codefendant Mario Chavez; Failure to object to entry of Mario Chavez' statements*

Mario Chavez was indicted and tried for the same crime, as Chavez' co-defendant. During the criminal investigation, Mario gave three written statements to police. In his first statement, taken at approximately 8 a.m. on January 1, 1995, Mario stated that he saw a knife in both Chavez' and Mandy Mendoza's hands after the fight ended. Mario stated that he did not see Chavez, or anyone else, stab Cortez. In his second statement, taken minutes after the first statement, Mario stated that "the person that stabbed this guy was my brother, Richard Chavez." Mario stated he saw Chavez stab Cortez one time only. In his third statement, taken on January 3, 1995, Mario stated again that he saw Chavez stab Cortez once, and added that Mario had kicked Cortez in the head after Cortez had been stabbed, and Mario saw Mandy Mendoza also stab Cortez twice. On January 2, 1995, Chavez also provided a written statement to the same investigating police officer. In his statement, Chavez admitted to stabbing Cortez twice, once in the arm and once in the area between Cortez' abdomen and chest. Chavez and Mario's written statements were referred to and read during presentation of the State's case. Mario's statements were not redacted to eliminate any reference to or implication of Chavez. The statements were not formally admitted into evidence, therefore, the jury did not have the statements during deliberations. Neither Chavez nor Mario Chavez testified at trial.

Chavez first contends he was denied effective assistance of counsel because his trial counsel failed to request severance of his case from that of his co-defendant, Mario Chavez. Chavez contends that the trial court would have been required to sever his trial from Mario's to prevent violation of Chavez' constitutional right to confrontation of incriminating witnesses. Chavez contends that the only way to protect his constitutional confrontation rights upon the State's use of Mario's incriminating written statements was to sever his case from Mario's. Chavez contends the use of the statement implicating him as the perpetrator denied him a fair and impar-

tial trial. Chavez contends trial counsel's failure to request the severance waived error and resulted in prejudice.

When two defendants are jointly indicted for the same offense, they should be tried jointly, as a general rule. However, the trial court may order separate trials, at its discretion. TEX.CODE CRIM. P. ANN. art. 36.09 (Vernon 1981). If a joint trial would prejudice either defendant, upon proper motion to sever, the trial court must sever the trial of the defendant whose joint trial could prejudice the other. *Id.* A defendant may establish prejudice that mandates severance by showing that a non-testifying co-defendant's confession implicating the defendant as the perpetrator of the crime charged will be admitted at the joint trial. *See Bruton v. United States,* 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Admission of a codefendant's extrajudicial statement that inculpates the other defendant violates the defendant's Sixth Amendment right to confront witnesses against him. *Id.* However, the prejudice caused by admission of a codefendant's statement may be avoided if the trial court instructs the jury to use the confession only against the confessing codefendant and the confession is redacted to eliminate the defendant's name and any reference to his existence. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Any Confrontation Clause violation is subject to harmless-error analysis. *See Harrington v. California,* 395 U.S. 250, 253–54, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *see also Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

"If the trial court was required to grant a motion to sever, and if counsel failed to ask for it, the appellant would be in the position to argue that his counsel had been ineffective." *See Haggerty v. State,* 825 S.W.2d 545, 547 (Tex.App.— Houston [1st Dist.] 1992, no pet.). Similarly, if the trial court would have abused its discretion by failing to grant a motion

to sever, the appellant would be in a position to argue that his trial counsel was ineffective by failing to move for severance. *Id.* Consequently, when confronted with a contention of ineffective assistance of counsel based on failure to file a motion to sever, this court must first determine whether a Confrontation Clause violation occurred. If so, this court must determine whether the violation was harmless. If the error was harmless, the defendant cannot show that he was prejudiced by his counsel's failure to file a motion to sever. If the error was harmful, the defendant can show that counsel's performance was deficient and that he was prejudiced by such performance.

A non-testifying co-defendant's confession implicating the defendant as the perpetrator of the crime charged is presumptively unreliable due to the unavailability of cross examination. *See Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). This presumption may be rebutted, however, and the statement admitted into evidence, if the proponent can show "sufficient indicia of reliability" flowing from either the circumstances surrounding the confession or the substantial corroboration of the codefendant's statement by the defendant's own confession. *See Lee,* 476 U.S. at 543–544, 106 S.Ct. 2056; *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). This exception to the general rule of unreliability does not apply to this case, however, because Mario's statement was not admitted into evidence, but was merely read to the jury as part of the State's presentation of its case. *See Cruz v. New York,* 481 U.S. 186, 193, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); *Lee* 476 U.S. at 543–44, 106 S.Ct. 2056. Accordingly, the presumption of unreliability of Mario's statements was not rebutted, and the State's use of Mario's unredacted statements violated Chavez' constitutional right to confrontation. *See Richardson,* 481 U.S. at

211, 107 S.Ct. 1702; *Bruton*, 391 U.S. at 135–37, 88 S.Ct. 1620. This court must, then, determine whether the violation of Chavez' Confrontation Clause rights was harmless constitutional error. *See Harrington*, 395 U.S. at 253–54, 89 S.Ct. 1726.

■■■■■ A constitutional error that is subject to harmless error review requires reversal unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a); *Chapman*, 386 U.S. at 24, 87 S.Ct. 824. In determining harm, the question is not whether the outcome was proper or whether there was overwhelming evidence of guilt, but rather whether the overwhelming evidence "dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict." *Harris v. State*, 790 S.W.2d 568, 587 ( Tex.Crim.App.1989). We must isolate the error and all its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *See id.* at 588. To make this determination, we consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the probable collateral implications of the error; and (5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587. We do not focus on the propriety of the outcome of the trial, but on the integrity of the process that led to conviction and punishment. *Id.* Overwhelming evidence of guilt, while not determinative, is a factor that can be considered. *See Denton v. State*, 920 S.W.2d 311, 312–13 (Tex.Crim. App.1996). In determining whether the introduction of a non-testifying co-defendant's confession implicating the defendant as the perpetrator of the crime charged was harmless, this court may also consider

the defendant's own confession. *See Cruz*, 481 U.S. at 192–94, 107 S.Ct. 1714.

■■■■■ The source and nature of the Confrontation Clause error was the improper introduction of Mario's pretrial written statements implicating Chavez. These statements were read to the jury once during the State's presentation of its case to the jury.[1] Before the statements' introduction, however, the jury heard substantial evidence of Chavez' involvement in Cortez' murder through other eyewitness testimony. These other eyewitnesses, Monica Perez, Jackie Arevelos, Michelle White, Richard Chassaigne, and Rebecca Pena, all testified that Chavez stabbed Cortez. Jennifer Hernandez testified that she saw Chavez fight with Cortez and she saw Chavez with a knife. Celina Elias testified that Chavez called her the morning after the fight and asked her to come pick him up. When she saw Chavez, he confessed that he had been in a fight and had stabbed someone named "Richard." Susie Flores testified that Chavez stated to her the morning after the fight that "[he] had no right to take this person's life." The State also introduced Chavez' own confession, which was taken before Mario's second and third statements implicating Chavez'. In his own statement, Chavez admitted he did more to commit Cortez' murder than that implicated in Mario's statements.

Although we cannot conclude that the jury did not place some weight on Mario's statements, considering the overwhelming eyewitness testimony implicating Chavez and Chavez' own admissions before Mario's accusations, we must conclude that these factors dissipated the error's effect upon the jury's function so that it did not contribute to the verdict. Because the constitutional error committed by introducing Mario's unredacted statements into evidence was harmless, Chavez cannot show that the record clearly confirms that,

---

1. The statements were referred to in the State's closing argument, but not in reference to their implication of Chavez' guilt.

but for counsel's unprofessional error, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Accordingly, Chavez cannot prove that his counsel was ineffective by failing to file a motion to sever his case from Mario's. *See id.* Chavez' first and second contentions are overruled.

*Failure to move for severance of trial based on prejudicial statements by codefendant's attorney*

 Chavez contends his trial counsel's failure to request severance of his case from Mario's case allowed Mario's attorney to make prejudicial statements before the jury that implicated his guilt.

Chavez cites several statements made by Mario's counsel during trial that he contends prejudiced his defense. However, Chavez fails to assert that his trial counsel knew or should have known prior to trial that these statements would be made. Chavez fails to show how the result of the proceedings would have been different had his trial counsel moved for severance on this basis, and fails to assert that his attorney's performance was unreasonable under prevailing professional norms, or that the challenged action was not sound trial strategy. Chavez' contentions rest solely in a "hindsight" view of his trial counsel's actions. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Chavez' sixth contention must fail on these bases, and is therefore overruled.

*Failure to request specific findings of fact*

In his third and fourth contentions, Chavez argues his trial counsel was ineffective because he failed to request that the trial court file findings of fact and conclusions of law following its pretrial hearing on the admissibility of his written statement. In the hearing, Chavez contended his written statement was not voluntary. The trial court never filed findings of fact and conclusions of law following its denial of Chavez' motion to suppress his written statement.

 When a defendant raises an issue regarding the voluntariness of a written statement given while in police custody, the trial court must hold a hearing outside the presence of the jury. If the trial court finds the statement to be voluntary and made while the defendant was in custody, it must enter written findings of fact and conclusions of law. TEX.CODE CRIM. P. ANN. art. 38.22, § 6 (Vernon 1979). If the trial court fails to file these findings and conclusions, this court must abate the appeal and remand to the trial court to perform its mandatory duty. *Garza v. State,* 915 S.W.2d 204, 210–11 (Tex.App.-Corpus Christi 1996, pet. ref'd). Because the issue of voluntariness of a statement is raised only when a defendant is in custody, no findings of fact or conclusions of law are required when a defendant's statement is not the product of custodial interrogation. Therefore, whether an appeal must be abated for findings of fact and conclusions turns on the custody issue.

 Because the only remedy available on appeal to a defendant upon a trial court's failure to file mandatory findings of fact and conclusions of law is a remand for the entry of such findings and conclusions, a defendant's contention of ineffective assistance of counsel on direct appeal based on counsel's failure to request findings and conclusions must fail. A defendant cannot show that the result of the proceedings would have been different had counsel made such request. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Chavez' third and fourth contentions are overruled.

*Failure to request jury charge on issue of sudden passion*

 Because evidence presented during the guilt/innocence phase of trial was sufficient to raise the issue of sudden passion, Chavez argues in his fifth contention that his trial counsel was ineffective by failing to request a jury charge on sudden passion at the punishment phase of trial. Chavez contends trial counsel's failure to request the charge on sudden pas-

sion caused harm because the jury could have imposed a lighter sentence if it found he acted under sudden passion.[2]

When the defendant raises issues of self-defense during the guilt/innocence phase of trial, the issue of sudden passion is typically also raised. *See Benavides v. State*, 992 S.W.2d 511, 524–25 (Tex.App.— Houston [1st Dist.] 1999, n.w.h.). Accordingly, trial courts should give both instructions when requested. *Id.* However, the adverse is also true: "[i]f, except in 'a rare instance,' the same evidence raising a fact issue on self-defense also raises an issue on 'sudden passion,' then it must also be true that, except in rare instances, when the State's evidence is sufficient to overcome a claim of self-defense, it will also be sufficient to show the absence of sudden passion." *Id.* at 525.

Because it is reasonable to presume that the evidence justifying the jury's finding against Chavez on self-defense would also justify a finding that Chavez was not acting under sudden passion, the record does not clearly confirm that trial counsel should have requested such instruction. Accordingly, Chavez' fifth contention is overruled.

Chavez' first point of error is overruled.

■ In his second point of error, Chavez contends the trial court erred during the punishment phase by denying him the opportunity to cross examine Ruben Cuellar, a friend of Cortez who was present during the fight, on the issue of sudden passion and adequate cause. Chavez contends that the exclusion of such evidence caused egregious harm.

Ruben Cuellar did not testify during the guilt/innocence phase of trial. During the punishment phase, the State called Cuellar to testify to Chavez' conduct at a pretrial hearing. Cuellar testified only that at a pretrial hearing, Mario and Richard Chavez blew a kiss in his direction, where he was seated with Cortez' parents. On cross examination, Chavez' attorney attempted to question Cuellar regarding the incident on January 1, 1995, in which Cortez was murdered. The State objected to such examination, and the trial court sustained the objection, limiting cross examination to matters testified to during direct examination of the punishment phase. Although Chavez' attorney objected to the court's ruling excluding the testimony, he did not make an offer of proof or a formal or informal bill of exception. Trial counsel merely asserted that evidence of sudden passion was relevant to the punishment phase pursuant to Section 19.02 of the Texas Penal Code, which allows presentation of such evidence by the defendant for mitigation purposes.[3]

■ When an appellant contends that his examination of a witness has been unduly limited, nothing is preserved for review unless the record shows what questions he wanted to propound and the answers he expected therefrom. *Toler v. State*, 546 S.W.2d 290, 295 (Tex.Crim. App.1977). Because Chavez failed to make an offer of proof or bill of exception, no error is presented for review. Chavez' second point of error is overruled.

---

2. The *Strickland* standard utilized to determine whether the accused was afforded effective assistance of counsel during the guilt/innocence phase of trial is also utilized to make this determination regarding counsel's performance during the punishment phase. *See Hernandez v. State*, 988 S.W.2d 770, 771–73 (Tex.Crim.App.1999)(en banc).

3. "At the punishment stage of trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." TEX. PENAL CODE ANN. § 19.02(d) (Vernon's 1994).