NO. 07-07-0467-CR
NO. 07-07-0468-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 17, 2008

______________________________


TRAVIS MITCHELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NOS. 55557-D & 55559-D; HONORABLE DON EMERSON, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Following pleas of guilty, Appellant, Travis Mitchell, was convicted of delivery of a
controlled substance and sentenced to seventeen years confinement. Proceeding pro se,
Appellant filed a notice of appeal challenging his convictions. The Trial Courtâs Certification
and Defendantâs Right of Appeal filed in both cases reflect that the cases are plea-bargained cases with no right of appeal and that Appellant waived his right of appeal. By
letter dated January 8, 2008, this Court notified Appellant that the certifications indicated
he had no right of appeal and invited him to either file amended certifications showing a
right of appeal or demonstrate other grounds for continuing the appeals. Appellant was
notified that failure to do so might result in dismissal per Rule 25.2 of the Texas Rules of
Appellate Procedure. Appellant timely filed a letter response to this Courtâs inquiry. 
Â Â Â Â Â Â Â Â Â Â A review of Appellantâs response does not contradict the certifications filed by the
trial court. We conclude Appellant has not demonstrated why the appeals should not be
dismissed based on the certifications signed by the trial court.
Â Â Â Â Â Â Â Â Â Â Consequently, the appeals are dismissed.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â 



Do not publish.



y="64" Name="Medium Shading 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0070-CR

Â 

IN THE
COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL D

Â 

APRIL 8, 2011

_____________________________

Â 

KENNETH
DUANE BALENTINE, 

 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellant

v.

Â 

THE STATE OF
TEXAS,Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellee

_____________________________

Â 

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

Â 

NO. 57,111-B; HONORABLE JOHN B. BOARD, PRESIDING

_____________________________

Â 

Memorandum Opinion

_____________________________

Â 

Â 

Before QUINN, C.J., and CAMPBELL
and PIRTLE, JJ.

Â Â Â Â Â Â Â Â Â Â Â  Kenneth Duane Balentine appeals his
conviction for murder by asserting three issues.Â  The first two concern the legal and factual
sufficiency of the evidence underlying the juryÂs decision to reject his claim
of self-defense.Â  The third issue
involves the purported ineffectiveness of his counsel during the punishment
phase of the trial.Â  We affirm the
judgment.Â  

Â Â Â Â Â Â Â Â Â Â Â  

Background

Â Â Â Â Â Â Â Â Â Â Â  Appellant shot Justin Hobbs after
the latter purportedly struck appellant and entered appellantÂs house through
the rear door.Â  Hobbs had been in the
home a short time earlier and had been asked to leave due to his conduct.Â  After leaving, he allegedly went to the back door
and began striking it.Â  Appellant, who
was wearing a firearm, went to the door and opened it after directing Hobbs to
stop ÂdisrespectingÂ the house.Â  At that
point, Hobbs allegedly struck him in the face and on his glasses with his fist,
causing appellant to fall backwards.Â  While
on the floor, appellant drew his firearm and shot Hobbs in the head after the
latter allegedly said something about appellant needing to use the weapon if he
drew it and reached for a pipe or stick allegedly kept by the door.Â  Needless to say, appellant used it.Â  

Â Â Â Â Â Â Â Â Â Â Â  Sufficiency Issues

Since the issuance of Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App.
2010), appellate claims involving the factual sufficiency of the evidence are
no longer viable.Â  Thus, we will consider
only the allegation that the juryÂs implicit rejection of appellantÂsÂ  claim of self-defense was legally
insufficient, that is, that there was no evidence of record from which jurors
could infer that appellant did not act in self-defense.Â  We overrule the issues.

A person is justified in using force against another, with
certain exceptions, when and to the degree he reasonably believes force is immediately
necessary to protect him against anotherÂs use or attempted use of unlawful
force.Â  Tex.
Penal Code Ann. Â Â§9.31(a) (Vernon Supp. 2010).Â 
Deadly force may be used when 1) the use of force under Â§9.31 is
justified, and 2) the actor reasonably believes deadly force is immediately
necessary to protect him against the other personÂs use or attempted use of
unlawful deadly force, or to prevent the other personÂs imminent commission of
various enumerated offenses.Â  Id.
Â§9.32(a).Â  

At bar, no one other than appellant and Hobbs actually
witnessed the shooting, according to the record.Â  Others supposedly heard commotion and a
gunshot, but appellant and Hobbs were alone at the back door.Â  Thus, the bulk of the testimony proffered in
support of the defense came from appellant himself, which, in turn, made his
credibility of paramount importance.Â 
With that in mind, we observe that more appears in the record than
merely evidence of HobbsÂ effort to attack appellant with a pipe or stick.Â  For instance, appellant had previously
brandished a firearm at Hobbs before Hobbs left the house.Â  Though Hobbs allegedly was angry about
something and acted accordingly, he had threatened no one.Â  Nonetheless, appellant pulled out his gun,
set it on a table and said ÂweÂre not going to act like that in my house.ÂÂ  Thereafter, appellant left, sat on the front
porch for a bit, and went to the back door.Â 
One could draw at least two reasonable inferences from this
testimony.Â  First, appellant had little
fear of Hobbs when he had his gun, and two, appellant was quick to exert his
authority via the exhibition of his firearm.Â 
More importantly, neither inference tends to support the contention that
appellant either feared or felt threatened by Hobbs.Â  

Next, appellantÂs son testified that he was told by appellant
that Hobbs was actually standing outside on the back porch when the shooting
occurred.Â  So too did appellant allegedly
reveal to his son that he (appellant) dragged Hobbs inside the house after the
shooting.Â  Other evidence indicated that
HobbsÂ hoodie was pulled up and/or over his head as if he was dragged.Â  This evidence tends to contradict the
veracity of appellantÂs testimony about shooting Hobbs after he entered the
abode.Â  So too could it lead one to
ponder whether appellant was merely trying to comply with that old adageÂ  about being able to better prove self-defense
by dragging the victim inside the house if he was shot outside it. 

Additionally, appellant cited us to no evidence indicating
that HobbsÂ fists were deadly weapons.Â 
Nor were we cited to any evidence indicating that Hobbs possessed any
type of weapon with which to strike appellant until he purportedly reached for
the pipe or stick allegedly by the back door.Â 
Yet, before Hobbs sought that instrument,Â  appellant already had drawn his handgun.Â  From this evidence, one reasonably could
infer that the act of appellant brandishing his weapon actually instigated both
HobbsÂ supposed comment about appellant needing to use it and his effort to
find some weapon with which to strike appellant.Â  In other words, one could question whether
appellant provoked the supposed need to use deadly force. 

Next, and after the shooting, appellant directed those in
another room of the house to leave, locked a door to his Âband roomÂ to protect
property therein from theft, and walked to a nearby convenience store to buy a
soda.Â  Upon his arrival there, he
appeared to be ÂnormalÂ and Âsmiling,Â according to the storeÂs clerk.Â  Additionally, heÂ  feigned to others that he did not know what happened.Â  For instance, while walking back to his house
with an acquaintance he said, ÂI wonder what [is] going on.ÂÂ  At another time, he asked someone at the
scene of the shooting if it was his gun that was used to shoot Hobbs.Â  Feigning ignorance of the circumstances
hardly supports the notion that appellant acted in self-defense but rather
indicates that he was being deceitful.Â  

After being told at the scene that Hobbs was the victim,
appellant said such things as ÂthatÂs what he get[s]Â and ÂI told him heÂs
always starting shit and talking shit to somebody,Â and ÂI knew somebody was
going to get his ass one day.ÂÂ  Aside
from illustrating an obvious lack of remorse or empathy for someone he knew,
those comments describe appellant as having an antipathy towards Hobbs as well
as a pre-existing belief that Hobbs merited being injured or shot.Â Â Â  

Â  Upon encountering the
police at the house, appellant said nothing to them about the shooting since he
was not asked.Â  Later that day, though, a
detective secured his statement.Â  In it,
appellant disclosed how Hobbs purportedly struck him with his fist and damaged
his glasses.Â  Upon hearing it, the
investigator looked at appellantÂs face and saw neither injury to it nor damage
to his glasses.Â  To this, we add the evidence
that no pipe or stick was found by the door.Â 
These bits of testimony tend to contradict appellantÂs version of events
and his need to defend himself.

In short, the foregoing evidence presented the jury with
various inconsistent scenarios of what occurred.Â  Among other things, it could be that
appellant provoked the use of deadly force, even if Hobbs had struck him with
his fist.Â  Or, it could be that Hobbs
never entered the house or struck appellant, given the testimony of the
latterÂs son.Â  Or, in acting normally
when entering the convenience store, in smiling, in feigning ignorance about
the event, in being offended by HobbÂs ÂdisrespectingÂ the house, in drawing
his handgun before Hobbs purportedly reached for his own weapon, and in dragging HobbsÂ
body inside the house, appellantÂs conduct and demeanor could be viewed as
calculating rather than spontaneous or fearful.Â 
Or, the nominal or non-existent evidence of injury to appellantÂs face
or damage to his glasses could lead one to reasonably question the allegation
that Hobbs struck first.Â  Similarly, the
absence of a pipe or like object by the door (and within HobbsÂ reach) could
also lead objective third parties to reasonably question whether appellant
simply made up the whole thing.Â  More
importantly, none of those scenarios comport with appellantÂs claim of
self-defense.Â  

Self-defense is an issue of fact to be determined by the
jury, and the jury is free to accept or reject it.Â  Saxton v. State, 804 S.W.2d 910, 913-14 (Tex. Crim.
App. 1991).Â  Moreover, the jury can infer
from contradictory statements and the defendantÂs conduct after the shooting
that he was not acting in self-defense.Â  Whipple
v. State, 281 S.W.3d
482, 497-98 (Tex. App.ÂEl Paso 2008, pet. refÂd).Â  So, while the jury had the discretion to
believe appellantÂs version of the events, there was some evidence of record which
freed it from having to accept that version.Â 
Reasonable minds reasonably could have concluded that both appellant and
his claim of self-defense were disingenuous.Â Â 


Ineffective Assistance of
Counsel

Next, appellant contends that his counel was ineffective
because he did not raise the issue of sudden passion during the punishment
phase of the trial.Â  We overrule the
issue.

Appellant was charged and tried for committing a felony of
the first degree.Â  Nonetheless, if he
proved by a preponderance of the evidence that he caused the death of Hobbs
while under the immediate influence of sudden passion arising from an adequate
cause, the offense could have been reduced to a felony of the second
degree.Â  Tex.
Penal Code Ann. Â§19.02(d)
(Vernon 2003).Â Â  

Next, and unlike the question of guilt, punishment was tried
to the court.Â  Why trial counsel did not
argue to the court that his clientÂs actions were stimulated by sudden passion
arising from adequate cause is unknown.Â 
This is of import since we are to presume that counselÂs action derived
from sound trial strategy, and that presumption cannot be overcome absent
evidence in the record of the attorney's reasons for his conduct.Â  Ex parte Niswanger, No. AP-76,302, 2011 Tex. Crim. App.
Lexis 390, at *9-10Â  (Tex. Crim. App.
March 16, 2011).Â  It may be that trial
counsel opted to forego the matter because the jury rejected the claim of
self-defense and because evidence appeared of record indicating that appellant
was being disingenuous.Â  See
Chavez v. State, 6 S.W.3d 56, 65 (Tex. App.ÂSan
Antonio 1999, pet. refÂd) (observing that when the
defendant raises issues of self-defense during the guilt/innocence phase of
trial, the issue of sudden passion is typically also raised, but, it is also
true that, except in rare instances, when the State's evidence is sufficient to overcome a claim of
self-defense, then it will also be sufficient to show the absence of sudden
passion); Kent v. State, 982 S.W.2d
639, 641 (Tex. App.ÂAmarillo 1998, pet. refÂd,
untimely filed) (holding that counsel need not pursue a baseless theory to be
effective). Â But, in any case, without
knowing the reasons, if any, underlying counselÂs decision, we cannot say that
appellant rebutted the aforementioned presumption.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, the judgment of the
trial court is affirmed.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Brian
Quinn

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice 

Do
not publish.