NO. 07-10-0070-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 8, 2011
_____

KENNETH DUANE BALENTINE,

                                                              Appellant
                              v.

THE STATE OF TEXAS,

                                                              Appellee
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 57,111-B; HONORABLE JOHN B. BOARD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Kenneth Duane Balentine appeals his conviction for murder by asserting three issues. The first two concern the legal and factual sufficiency of the evidence underlying the jury's decision to reject his claim of self-defense. The third issue involves the purported ineffectiveness of his counsel during the punishment phase of the trial. We affirm the judgment.

*Background*

Appellant shot Justin Hobbs after the latter purportedly struck appellant and entered appellant's house through the rear door. Hobbs had been in the home a short time earlier and had been asked to leave due to his conduct. After leaving, he allegedly went to the back door and began striking it. Appellant, who was wearing a firearm, went to the door and opened it after directing Hobbs to stop "disrespecting" the house. At that point, Hobbs allegedly struck him in the face and on his glasses with his fist, causing appellant to fall backwards. While on the floor, appellant drew his firearm and shot Hobbs in the head after the latter allegedly said something about appellant needing to use the weapon if he drew it and reached for a pipe or stick allegedly kept by the door. Needless to say, appellant used it.

*Sufficiency Issues*

Since the issuance of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), appellate claims involving the factual sufficiency of the evidence are no longer viable. Thus, we will consider only the allegation that the jury's implicit rejection of appellant's claim of self-defense was legally insufficient, that is, that there was no evidence of record from which jurors could infer that appellant did not act in self-defense. We overrule the issues.

A person is justified in using force against another, with certain exceptions, when and to the degree he reasonably believes force is immediately necessary to protect him against another's use or attempted use of unlawful force. TEX. PENAL CODE ANN. §9.31(a) (Vernon Supp. 2010). Deadly force may be used when 1) the use of force under §9.31 is justified, and 2) the actor reasonably believes deadly force is

2

immediately necessary to protect him against the other person's use or attempted use of unlawful deadly force, or to prevent the other person's imminent commission of various enumerated offenses. *Id.* §9.32(a).

At bar, no one other than appellant and Hobbs actually witnessed the shooting, according to the record. Others supposedly heard commotion and a gunshot, but appellant and Hobbs were alone at the back door. Thus, the bulk of the testimony proffered in support of the defense came from appellant himself, which, in turn, made his credibility of paramount importance. With that in mind, we observe that more appears in the record than merely evidence of Hobbs' effort to attack appellant with a pipe or stick. For instance, appellant had previously brandished a firearm at Hobbs before Hobbs left the house. Though Hobbs allegedly was angry about something and acted accordingly, he had threatened no one. Nonetheless, appellant pulled out his gun, set it on a table and said "we're not going to act like that in my house." Thereafter, appellant left, sat on the front porch for a bit, and went to the back door. One could draw at least two reasonable inferences from this testimony. First, appellant had little fear of Hobbs when he had his gun, and two, appellant was quick to exert his authority via the exhibition of his firearm. More importantly, neither inference tends to support the contention that appellant either feared or felt threatened by Hobbs.

Next, appellant's son testified that he was told by appellant that Hobbs was actually standing outside on the back porch when the shooting occurred. So too did appellant allegedly reveal to his son that he (appellant) dragged Hobbs inside the house after the shooting. Other evidence indicated that Hobbs' hoodie was pulled up and/or over his head as if he was dragged. This evidence tends to contradict the veracity of

appellant's testimony about shooting Hobbs after he entered the abode. So too could it lead one to ponder whether appellant was merely trying to comply with that old adage about being able to better prove self-defense by dragging the victim inside the house if he was shot outside it.

Additionally, appellant cited us to no evidence indicating that Hobbs' fists were deadly weapons. Nor were we cited to any evidence indicating that Hobbs possessed any type of weapon with which to strike appellant until he purportedly reached for the pipe or stick allegedly by the back door. Yet, before Hobbs sought that instrument, appellant already had drawn his handgun. From this evidence, one reasonably could infer that the act of appellant brandishing his weapon actually instigated both Hobbs' supposed comment about appellant needing to use it and his effort to find some weapon with which to strike appellant. In other words, one could question whether appellant provoked the supposed need to use deadly force.

Next, and after the shooting, appellant directed those in another room of the house to leave, locked a door to his "band room" to protect property therein from theft, and walked to a nearby convenience store to buy a soda. Upon his arrival there, he appeared to be "normal" and "smiling," according to the store's clerk. Additionally, he feigned to others that he did not know what happened. For instance, while walking back to his house with an acquaintance he said, "I wonder what [is] going on." At another time, he asked someone at the scene of the shooting if it was his gun that was used to shoot Hobbs. Feigning ignorance of the circumstances hardly supports the notion that appellant acted in self-defense but rather indicates that he was being deceitful.

4

After being told at the scene that Hobbs was the victim, appellant said such things as "that's what he get[s]" and "I told him he's always starting shit and talking shit to somebody," and "I knew somebody was going to get his ass one day." Aside from illustrating an obvious lack of remorse or empathy for someone he knew, those comments describe appellant as having an antipathy towards Hobbs as well as a pre-existing belief that Hobbs merited being injured or shot.

Upon encountering the police at the house, appellant said nothing to them about the shooting since he was not asked. Later that day, though, a detective secured his statement. In it, appellant disclosed how Hobbs purportedly struck him with his fist and damaged his glasses. Upon hearing it, the investigator looked at appellant's face and saw neither injury to it nor damage to his glasses. To this, we add the evidence that no pipe or stick was found by the door. These bits of testimony tend to contradict appellant's version of events and his need to defend himself.

In short, the foregoing evidence presented the jury with various inconsistent scenarios of what occurred. Among other things, it could be that appellant provoked the use of deadly force, even if Hobbs had struck him with his fist. Or, it could be that Hobbs never entered the house or struck appellant, given the testimony of the latter's son. Or, in acting normally when entering the convenience store, in smiling, in feigning ignorance about the event, in being offended by Hobb's "disrespecting" the house, in drawing his handgun *before* Hobbs purportedly reached for his own weapon, and in dragging Hobbs' body inside the house, appellant's conduct and demeanor could be viewed as calculating rather than spontaneous or fearful. Or, the nominal or non-existent evidence of injury to appellant's face or damage to his glasses could lead one

to reasonably question the allegation that Hobbs struck first. Similarly, the absence of a pipe or like object by the door (and within Hobbs' reach) could also lead objective third parties to reasonably question whether appellant simply made up the whole thing. More importantly, none of those scenarios comport with appellant's claim of self-defense.

Self-defense is an issue of fact to be determined by the jury, and the jury is free to accept or reject it. *Saxton v. State,* 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). Moreover, the jury can infer from contradictory statements and the defendant's conduct after the shooting that he was not acting in self-defense. *Whipple v. State,* 281 S.W.3d 482, 497-98 (Tex. App.–El Paso 2008, pet. ref'd). So, while the jury had the discretion to believe appellant's version of the events, there was some evidence of record which freed it from having to accept that version. Reasonable minds reasonably could have concluded that both appellant and his claim of self-defense were disingenuous.

*Ineffective Assistance of Counsel*

Next, appellant contends that his counel was ineffective because he did not raise the issue of sudden passion during the punishment phase of the trial. We overrule the issue.

Appellant was charged and tried for committing a felony of the first degree. Nonetheless, if he proved by a preponderance of the evidence that he caused the death of Hobbs while under the immediate influence of sudden passion arising from an adequate cause, the offense could have been reduced to a felony of the second degree. TEX. PENAL CODE ANN. §19.02(d) (Vernon 2003).

Next, and unlike the question of guilt, punishment was tried to the court. Why trial counsel did not argue to the court that his client's actions were stimulated by

6

sudden passion arising from adequate cause is unknown. This is of import since we are to presume that counsel's action derived from sound trial strategy, and that presumption cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Ex parte Niswanger*, No. AP-76,302, 2011 Tex. Crim. App. LEXIS 390, at *9-10 (Tex. Crim. App. March 16, 2011). It may be that trial counsel opted to forego the matter because the jury rejected the claim of self-defense and because evidence appeared of record indicating that appellant was being disingenuous. *See Chavez v. State,* 6 S.W.3d 56, 65 (Tex. App.–San Antonio 1999, pet. ref'd) (observing that when the defendant raises issues of self-defense during the guilt/innocence phase of trial, the issue of sudden passion is typically also raised, but, it is also true that, except in rare instances, when the State's evidence is sufficient to overcome a claim of self-defense, then it will also be sufficient to show the absence of sudden passion); *Kent v. State,* 982 S.W.2d 639, 641 (Tex. App.–Amarillo 1998, pet. ref'd, untimely filed) (holding that counsel need not pursue a baseless theory to be effective). But, in any case, without knowing the reasons, if any, underlying counsel's decision, we cannot say that appellant rebutted the aforementioned presumption.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Chief Justice

Do not publish.


7