

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00768-CR

Aurelio **ESCOBAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 365th Judicial District Court, Zavala County, Texas
Trial Court No. 13-02-03395-ZCRAJA
Honorable Amado J. Abascal, III, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
            Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  September 5, 2018

AFFIRMED

Aurelio Escobar appeals his murder conviction challenging the sufficiency of the evidence to support his conviction and asserting trial counsel rendered ineffective assistance of counsel by failing to request a sudden passion instruction in the jury charge at the punishment phase of trial. We affirm the trial court's judgment.

### BACKGROUND

Escobar was charged with the murder of Noel Ruiz. Ruiz was the uncle of his girlfriend's children.

On the night of the murder, Josie Lopez, Escobar's girlfriend, dropped off her children to be babysat by her ex-mother-in-law Santa who was Ruiz's sister. Ruiz was living with his sister and his mother at that time. Escobar and Lopez went to a bar and drank until the bar closed before returning to Santa's home. Lopez estimated she drank ten to fifteen beers and smoked marijuana. Escobar estimated he drank about twenty or twenty-five beers at the bar.

Upon arriving at Santa's home, Escobar, Lopez, and Ruiz continued drinking outside. When Escobar, Lopez, and Ruiz went inside, Escobar began making himself something to eat, and Lopez laid down with her children in the bedroom. After eating, Escobar testified he went into the restroom for five minutes and then entered the bedroom where he saw Ruiz sitting on the corner of the bed. Lopez's pants were pulled down and Ruiz's right hand was between her butt cheeks. Escobar approached Ruiz and hit him, and Ruiz punched him back. The fight went from the bedroom to the living room, and Escobar testified Ruiz "went down" after Escobar hit him by the sofa. Escobar further testified he returned to the bedroom after Ruiz "went down" and never hit Ruiz again.

Lopez testified she was awakened by Escobar yelling at her and her children crying. Escobar testified he told Lopez what he saw Ruiz doing. Lopez testified her pants and underwear were pulled down when she woke up. Lopez further testified Escobar was angry and had blood on his hand. Lopez asked Escobar to bring her a phone, and she called her brother to pick her up. As Lopez returned to the bedroom with her children's things, she saw Ruiz lying on the sofa facing up and snoring and also saw Escobar returning to the living room. Lopez testified she believed Escobar was going to hit Ruiz because she saw his hand go up. While she was in the bedroom, Lopez testified she heard Escobar hit Ruiz at least three more times, and maybe four or five times. In her statement to police, Lopez stated she saw Escobar punching Ruiz in the face.

Lopez testified she did not look at Ruiz when she left with her children but heard him snoring. She also testified the children were scared and telling Escobar to leave. Lopez testified Escobar did not leave with them, but Escobar testified he left with Lopez. Escobar testified Ruiz was not bleeding but was snoring on the sofa when they left.

Ruiz was not breathing and did not have a pulse when EMS arrived. The EMS technician testified Ruiz was bleeding profusely from his nose and mouth while they were transporting him to the hospital.

Chief of Police Johnny A. Vasquez, Jr. testified he left Lopez's first interview when he received information regarding Escobar's location. Chief Vasquez set up a surveillance of the residence and observed a female arrive, exit her vehicle, and approach the residence. When no one answered the door, she returned to her vehicle but then saw someone at the front door. She and another male who was in the vehicle approached and entered the residence, stayed for several minutes, and then left. The vehicle was stopped by an officer, and the male inside the vehicle was identified as Gabriel Ramirez. Ramirez stated he had made contact with Escobar inside the residence. After receiving this information, Chief Vasquez approached the house and knocked; however, no one answered the door. After waiting several hours, Chief Vasquez saw Escobar through a window and asked him to exit the residence to speak with him. A short time later, Escobar exited the residence and was arrested.

A photograph of Ruiz's body which showed the blood on the sofa and the pool of blood beside Ruiz's body on the floor was introduced into evidence. A close-up photograph showing the severity of the injuries to Ruiz's face and close-up photographs of the blood on the sofa and the floor were also introduced into evidence. A few drops of blood were located on the floor of the entryway to the living room and on the floor of the bedroom. DNA testing revealed the drops of blood on the bedroom floor and the entryway were Escobar's blood. DNA testing on nail

clippings from Ruiz's left hand showed Lopez's DNA was present, and a DNA lab employee testified DNA is easier to transfer through wet body fluid than by a handshake. The employee agreed Lopez's DNA could be present because Ruiz had sexual contact with Lopez but also stated it was only one possible explanation, and the testing could not determine from which part of the body Lopez's DNA was transferred. Lopez's DNA was not present on the nail clippings from Ruiz's right hand.

Ranger Randy Garcia and Chief Vasquez both testified Escobar's knuckles on his right hand were swollen and bruised, and he had several cuts on his third finger. Ranger Garcia testified the injuries were consistent with Escobar assaulting someone. Photographs of Escobar's hands taken after his arrest were introduced into evidence. Ranger Garcia testified he did not observe any other injuries on Escobar.

After Lopez's first interview, she posted a message on Facebook stating "it's crazy to have sumone tell u ill kill sumone for u girl !!! and it actually happens." After the posting, Lopez was interviewed a second time. Ranger Garcia testified he scheduled a sexual assault nurse examination for Lopez after the second interview. He further testified that no information was obtained in the first interview to suggest a need for the examination. Lopez testified she told Ranger Garcia during her first interview that she knew Ruiz did not have sex with her.

The medical examiner testified Ruiz's external injuries included bruising around both eyes, shallow lacerations underneath his right eye, a shallow laceration on his right check, two shallow lacerations on the bridge of his nose, an abrasion of his mid-upper lip, lacerations and a contusion inside his lip, dislocation of his jaw bone, and abrasions on his left upper neck. Ruiz also had internal injuries including bleeding under both the front and side of his scalp, a subdural hemorrhage or bleeding around his brain, a rib fracture, a hemorrhage surrounding his rib cage, and bleeding of the tissue that holds the intestines in place. The medical examiner testified the

dislocation of Ruiz's jaw was a serious injury and required a significant amount of force. She also testified the subdural hemorrhage is a serious, potentially fatal injury, and both the rib fracture and the injuries to the intestinal tissue would require a significant blow. Ruiz had high levels of alcohol and cocaine in his blood. The medical examiner opined Ruiz died from blunt force injuries to his head which he sustained in an assault. The medical examiner noted Ruiz had so much bleeding in his mouth that he aspirated the blood into his lungs.

## SUFFICIENCY

In his first issue, Escobar challenges the sufficiency of the evidence to support the jury's finding that he was guilty of murder. Escobar was charged with murder under section 19.02(b)(2) of the Texas Penal Code which provides a person commits the offense of murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011). Escobar specifically challenges the jury's finding that he intended to cause serious bodily injury. A defendant's intent can be inferred from circumstantial evidence, such as his words, actions, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Rivera v State*, 363 S.W.3d 660, 670 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In his second issue, Escobar challenges the jury's implicit rejection of his defense of a person.[1] A person is justified in using deadly force against another: (1) if he would be justified in using force against the other person; and (2) it was reasonable to believe that deadly force was immediately necessary to prevent the other's imminent commission of a sexual assault. TEX.

---

[1] Although Escobar's issue refers to factual sufficiency in challenging the jury's implicit rejection of his defense, the only standard applicable to reviewing the sufficiency of the evidence relating to the jury's implicit rejection of a defense is legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Miranda v. State*, 350 S.W.3d 141, 147 (Tex. App.—San Antonio 2011, no pet.). Therefore, we construe Escobar's challenge as a legal sufficiency challenge.

PENAL CODE ANN. § 9.32(a)(2)(B) (West 2011). "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. at § 9.31(a). An actor's belief that force is immediately necessary is presumed reasonable if the actor knew or had reason to believe the other person was committing a sexual assault. *Id*. at § 9.31(a)(1)(C).

Once a defendant produces some evidence raising the issue of defense of a person, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). To meet its burden of persuasion, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913. If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Id*. at 914; *see also Zuliani*, 97 S.W.3d at 594.

When a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his defense, "we look not to whether the State presented evidence which refuted appellant's [] testimony [supporting his defense], but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914; *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

With regard to Escobar's intent to cause serious bodily injury, the jury could infer Escobar intended to inflict serious bodily injury based on the number of times he punched Ruiz and the

medical examiner's description of the amount of force required to inflict the injuries. The jury could also find the injuries were serious based on the photographs of Ruiz's face, the description of his profuse bleeding, and the medical examiner's description of his injuries.

With regard to Escobar's defense, the jury could have inferred from Lopez's testimony that the injuries were not inflicted on Ruiz during the initial altercation when Escobar was protecting Lopez. Instead, the jury could have believed Escobar inflicted the injuries when he returned to the living room and punched Ruiz several more times after Ruiz was asleep and Lopez was no longer being assaulted. Alternatively, the jury could have believed Escobar inflicted the injuries after Lopez left with her brother. Furthermore, the jury could have believed Escobar would have been more cooperative in speaking with law enforcement if he had been acting in Lopez's defense when he caused the fatal injuries to Ruiz.

Having reviewed all of the evidence, we hold the evidence is legally sufficient to support the jury's finding that Escobar intended to cause serious bodily injury to Ruiz and to support the jury's implicit rejection of Escobar's defense. Escobar's first and second issues are overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Escobar contends trial counsel rendered ineffective assistance of counsel in failing to request a sudden passion instruction in the jury charge at the punishment phase of trial.

To prevail on a claim of ineffective assistance of counsel, appellant must establish by a preponderance of evidence that: (1) his attorney's performance was deficient; and (2) his attorney's deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellant must satisfy both *Strickland* elements, and the failure to show either deficient performance or prejudice will defeat the claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

We presume an attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In the absence of a developed record, we will not speculate as to the reasons trial counsel acted as he did. *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd). Rather, we "must presume that the actions were taken as part of a strategic plan for representing the client." *Id.*

In this case, the record is silent with regard to the reason trial counsel did not request a sudden passion instruction in the jury charge. Accordingly, the record does not overcome the presumption of reasonable and professional assistance, and we will not speculate as to the reasons trial counsel acted as he did. *But see Wooten v. State*, 400 S.W.3d 601, 609 (Tex. Crim. App. 2013) ("It is highly unlikely that a jury that had already rejected the appellant's claim that he reasonably believed that deadly force was immediately necessary to defend himself would nevertheless find in his favor on the issue of sudden passion."); *Rivas v. State*, 473 S.W.3d 877, 885–86 (Tex. App.—San Antonio 2015, pet. ref'd) ("Based on our review of the record as a whole, we conclude that, in this case, the evidence contradicting Leonardo's claim of self-defense is also sufficient to establish the absence of harm from the denial of a sudden passion instruction."); *see also Newkirk v. State*, 506 S.W.3d 188, 199 (Tex. App.—Texarkana 2016, no pet.) (holding appellant failed to establish prejudice as required by *Strickland* based on trial counsel's failure to request sudden passion instruction "[g]iven the jury's previous rejection of self defense and the evidence the jury had before it"); *Chavez v. State*, 6 S.W.3d 56, 64-65 (Tex. App.—San Antonio 1999, pet. ref'd) (rejecting ineffective assistance of counsel claim based on failure to request sudden passion instruction because jury would consider same evidence it rejected in finding against defendant on his self-defense claim). Escobar's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH