COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TYRONE DWIGHT NEAL, | § | No. 08-07-00232-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 204th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Dallas County, Texas |
| Appellee. | § | |
| | | (TC#F-0501614-Q) |
| | § | |

**O P I N I O N**

Appellant, Tyrone Neal, was convicted of murder and sentenced to forty-two years' imprisonment, and assessed a $10,000 fine. On appeal, Appellant brings nine issues, which we find to be without merit. Accordingly, we affirm the trial court's judgment.

**BACKGROUND**

On November 8, 2004, Appellant, his sister (Francis Ford), and his sister's boyfriend (Tyson Patterson), were at the apartment of his girlfriend, Tracy Spencer, when Appellant became upset that Spencer was speaking to Craig Earl, the father of Spencer's youngest child, on the phone. Mad, Appellant grabbed the phone and argued with Earl. The apartment's occupants overheard Appellant ask Earl "where he wanted to meet up at" and told him to bring a gun. When he finished, Appellant argued with Spencer. Appellant soon left, but returned with a gun he retrieved from a friend in a nearby apartment. Upon his return, Appellant argued with Spencer in her bedroom. During the argument, Spencer, holding her two-year-old son, saw that Appellant was wearing a holster with a gun. Spencer asked if Appellant was going to shoot her, and Appellant replied, "I'm going to do you and then I'm going to do myself." Appellant then took Spencer's son, opened the door to the

bedroom, and placed him outside. As the argument continued, Appellant took the gun out of the holster and held it in his hand. Appellant asked if Spencer still wanted to be with him, and Spencer, scared, replied that she would stay with him. At that point, Appellant told Spencer that he would not shoot her but he "will shoot that [N-word] in there." Spencer believed Appellant was referring to Patterson.

When the argument between Spencer and Appellant ended, Appellant walked into the living room where Ford and Patterson were sitting on the couch. Appellant began agitating Ford. Appellant told Ford that he was "going to deal with anybody who has ever crossed me" tonight. Ford told Appellant that she did not want to talk to him, but he continued by telling her that she was "crossing" him. Patterson tried to calm Appellant down. He placed his hand on Appellant and said, "Let's go outside and talk." Appellant told Patterson to take his hands off of him and to leave the apartment. Patterson responded that he did not know what "beef" Appellant had with him. Appellant told Patterson that he could go to his car and get his gun. When Patterson refused, the argument escalated.

By that point, everyone was yelling loudly, prompting Spencer to call 911; however, she hung up the phone when she heard Ford screaming. According to Ford, Appellant brandished his gun, and as she tried to grab it, she fell to the floor. Appellant pointed the gun at her head, but a 911 operator called the apartment to say that Spencer's earlier call had been interrupted, and Ford took the call. Appellant told Ford that he did not care whether she called the police on him, and Patterson told Ford that they should leave the apartment. Without touching Appellant, Patterson walked away with Ford, and as they walked by Appellant, Patterson asked what he was "tripping on." Appellant replied, "I'm tripping with the world." Appellant then raised his hand and shot Patterson in the right ear.

Appellant fled the scene, ditching the gun with the owner. Appellant then went to a friend's

apartment in the same complex. He hid there until the police later found him under one of the beds.

At the police station, Appellant gave a written statement, asserting that when Patterson put his hand up in a defensive manner, he raised his arm in a blocking fashion, and the gun fired. However, Appellant did not deny that he got into arguments with, and displayed a gun to, the occupants in the apartment. He admitted that he pointed the gun at Ford's chest and asked her if this was what she wanted. He also admitted that he ordered Patterson to leave the apartment. Appellant stated he was "tripping" and "over the edge," and that he was so aggravated that he screamed out that he was going to "crush" everyone who had tried to "cross" him since his release from prison. Appellant acknowledged he was "above and beyond mad."

## DISCUSSION

Appellant's first issue asserts that the court erred in refusing to declare a mistrial when the State, during opening argument at the guilt-innocence phase, informed jurors that punishment was the more important decision. We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). To warrant a mistrial based on improper argument, the argument must be "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.*; *see Simpson v. State,* 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 524 U.S. 905 (2004). In making this determination, we balance the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks) against curative measures adopted and the certainty of conviction absent the misconduct. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007); *Hawkins*, 135 S.W.3d at 77. As the jury is presumed to comply with the trial court's instructions, an instruction to disregard generally cures any improper statements. *Wesbrook v. State*, 29 S.W.3d 103, 115-16 (Tex. Crim. App. 2000); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Thus, only offensive or flagrant

statements may warrant reversal despite an instruction to disregard. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994).

Here, the prosecutor stated:

And once you hear all the evidence in this phase of the trial, you will understand how every element has without a doubt been proved beyond a reasonable doubt. And then we can move on to the final phase where the more important decision will need to be made regarding punishment.

The defense objected, asserting that the comment was improper, and the trial court sustained the objection and instructed the jury to disregard it. The trial court denied the defense's subsequent motion for a mistrial.

Appellant compares the prosecutor's statement to those found reversible in *Cherry v. State*, 507 S.W.2d 549 (Tex. Crim. App. 1974), and *Kelly v. State*, 903 S.W.2d 809 (Tex. App.–Dallas 1995, pet. ref'd). In *Cherry,* the Court found the State's closing argument harmful when the prosecutor argued he would not waste the jury's time, that they should be quick in finding the defendant guilty, and that the real issue in the case was punishment. *Cherry,* 507 S.W.3d at 549. In *Kelly,* the Court held that the State's closing argument was improper when the prosecutor argued that the real reason the case was tried was not to determine the defendant's guilt or innocence, but to determine his punishment. *Kelly,* 903 S.W.2d at 810-11.

We find the remarks made in *Cherry* and *Kelly* distinguishable for three reasons. First, there could be no question that the prosecutors in those cases were instructing the juries not to be concerned with guilt when they told them not to waste time in deliberating guilt, or that the case was not being tried to determine guilt. *Cherry,* 507 S.W.2d at 549; *Kelly,* 903 S.W.2d at 811. Here, despite the prosecutor's statement that the punishment decision was more important, she did not state that the determination of guilt was a waste of time, not the real issue, or that it should be decided

quickly. Rather, she stated that "once you hear all the evidence in this phase of the trial, you will understand how every element has without a doubt been proved beyond a reasonable doubt." Read in context, the comment did not encourage the jurors to ignore their duties to decide guilt or innocence, but rather that the State's case was so strong that the jury would agree without any difficulty that the State, after presenting the evidence, had established guilt beyond a reasonable doubt.

Second, the comments in *Cherry* and *Kelly* were made in closing arguments, just before the jury retired to deliberate guilt or innocence. *Cherry,* 507 S.W.2d at 549; *Kelly,* 903 S.W.2d at 811. Here, the single remark, which was never alluded to again, was made at the beginning of the trial, before the presentation of evidence, and additional closing arguments followed that focused the jury's attention on the importance of its duty in deliberating guilt.

Finally, the trial courts in *Cherry* and *Kelly* overruled the defendants' objections to the improper argument. *Cherry,* 507 S.W.2d at 549; *Kelly,* 903 S.W.2d at 811. Here, the trial court not only sustained the objection to the opening statement, but also gave a prompt jury instruction to disregard.

Given the context of the comment and when it was given, we find the prompt instruction to disregard sufficient to cure any error. *See White v. State*, 910 S.W.2d 630, 634 (Tex. App.–Beaumont 1995, no pet.); *Calderon v. State*, 847 S.W.2d 377, 380-81 (Tex. App.–El Paso 1993, pet. ref'd). Failing to see how the prosecutor's statement was so "offensive or flagrant" such that a mistrial was warranted, we hold the trial court did not abuse its discretion by overruling the defense's motion for mistrial. Appellant's first issue is overruled.

In his second issue, Appellant asserts that the evidence is factually insufficient to support his murder conviction, arguing the murder was an unintentional accident. We disagree.

In examining the factual sufficiency of the evidence, we review all the evidence presented, both State and defense, in a neutral light, favoring neither party. *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996). Evidence may be factually insufficient if it is so weak that it would clearly be wrong and manifestly unjust for the verdict to stand, or "the adverse finding is against the great weight and preponderance of the available evidence." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). However, we cannot conclude that a conviction is clearly wrong or manifestly unjust simply because, on the amount of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Nor may we declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Watson*, 204 S.W.3d at 417. Rather, to find the evidence factually insufficient, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting our review, we afford due deference to the jury's determinations of witness credibility and weighing of evidence. *Johnson*, 23 S.W.3d at 8-9; *Torres v. State*, 141 S.W.3d 645, 662 (Tex. App.–El Paso 2004, pet. ref'd).

Turning to the facts of this case, we believe the jury could have rationally found Appellant intentionally or knowingly caused Patterson's death, or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Patterson's death. TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2) (Vernon 2003). The record reflects that Appellant was angry, left the apartment, and returned with a gun. He argued with the persons in the apartment and threatened to murder Earl, Spencer, Patterson, and himself. As the parties yelled loudly, Appellant brandished a gun and pointed it at Ford's head. Appellant was "above and beyond mad" and was going to "crush" anyone who "crossed" him. The dangerous nature of the situation was apparent from the loud

yelling, the unholstered gun, and the call to 911 for help. As Appellant continued to argue with Ford and Patterson, he held the gun in his right hand. When Ford and Patterson tried to leave, Appellant simply raised his arm and shot Patterson in the head. After the shooting, Appellant fled the scene and ditched the gun and hid. This, we find, was factually sufficient evidence. *See Bigby v. State*, 892 S.W.2d 864, 884 (Tex. Crim. App. 1994) (noting that evidence of flight shows a consciousness of guilt of the crime for which the defendant is on trial), *cert. denied,* 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995); *Moreno v. State*, 755 S.W.2d 866, 868-69 n.3 (Tex. Crim. App. 1988) (the use of a deadly weapon constitutes more than a "mere modicum" of evidence showing intent to kill); *Jefcoat v. State*, 644 S.W.2d 719, 725 (Tex. Crim. App. 1982) (use of gun created a presumption that defendant intended to cause another's death).

Appellant emphasizes his version of the events, that is, that the gun fired accidentally during a struggle, to seemingly defeat the *mens rea* requirement and claim the evidence was factually insufficient. But the jury, as the sole judge of the credibility of the witnesses and the weight to assess their testimony, was entitled to reject Appellant's version. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (the jury may "believe all, some, or none of the [witnesses'] testimony"). The evidence is not insufficient simply because the fact finder accepts the State's version of the case as true and rejects that of the defense. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993); *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim. App.1983). After reviewing all the evidence in the record, we cannot say that the evidence supporting the conviction was outweighed by contrary proof. Accordingly, we hold the evidence factually sufficient to support Appellant's conviction for murder and overrule Appellant's second issue.

Appellant's third issue contends that the trial court erred by denying his motion to suppress his written statement when he was emotionally distraught at the time it was given, rendering the

statement involuntary. However, Appellant did not raise his involuntary, emotionally-distraught claim in the trial court below. Rather, Appellant only made a general involuntariness objection to his statement under the Fourth, Fifth, and Fourteenth Amendments at the motion-to-suppress hearing and later at trial. Although Appellant did not explain those generalized objections, it was clear, at the motion-to-suppress hearing, that Appellant focused on when he was advised under *Miranda*,[1] whether he understood those rights, and whether he asked to see an attorney. Because Appellant's emotionally-distraught complaint was never presented to the trial court, nor does it comport with his objections at trial, we find Appellant has failed to preserve his third issue for our review. *See* TEX. R. APP. P. 33.1 (to preserve a complaint for appellate review, the complaint must be presented to and ruled upon by the trial court); *Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (holding appellant's general trial objection, in comparison with those lodged on appeal, were not sufficiently specific to preserve any error); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited). Appellant's third issue is overruled.

In his fourth issue, Appellant asserts that the trial court erred by failing to instruct the jury to disregard the prosecutor's question concerning why his probation was revoked. The question was posed during Appellant's cross-examination. Appellant did not answer the question but instead raised an improper-impeachment objection, and the trial court sustained the objection. However, the trial court denied Appellant's request for an instruction to disregard.

The Court of Criminal Appeals has held that the "grounds for a probation revocation may not be raised for impeachment purposes at trial." *Brown v. State*, 692 S.W.2d 497, 500-01 (Tex. Crim. App. 1985), *citing Cross v. State*, 586 S.W.2d 478, 481 (Tex. Crim. App. 1979). The State does not

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

contest that the trial court erred in sustaining the objection; rather, it contends that any error was harmless and did not prejudice the jury. Both parties agree that our analysis is guided by Rule 44.2(b) of the Texas Rules of Appellate Procedure, which provides that any nonconstitutional error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b). Factors we may consider include the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

The mere asking of an improper question will not constitute reversible error unless the question results in obvious harm to the accused. *Brown*, 692 S.W.2d at 501; *Yarbrough v. State,* 617 S.W.2d 221, 228 (Tex. Crim. App. 1981). Though the State's question was improper, the trial court quickly sustained the objection, leaving the question unanswered, and stopped any further inquiry into the subject. *See Richard v. State*, 830 S.W.2d 208, 215 (Tex. App.–Houston [14th Dist.] 1992, pet. ref'd) (stating unanswered question did not inject new facts into trial). Further, after reviewing the evidence, we find overwhelming evidence of guilt; thus, the conviction was certain even if the prosecutor never posed the question. *See Vanderbilt v. State,* 629 S.W.2d 709, 724 (Tex. Crim. App. 1981) (average jury would not have found the State's case significantly less persuasive had the question not been asked). In short, we do not find the prosecutor's question had a "substantial and injurious effect or influence in determining the jury's verdict." *See King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Issue Four is overruled.

Appellant's fifth issue contends that the trial court erred by denying his requested instruction on the lesser-included offense of criminally-negligent homicide. A defendant is entitled to an instruction on a lesser-included offense if: (1) proof of the charged offense includes the proof required to establish the lesser-included offense; and (2) there is some evidence in the record that

would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001); *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd). In assessing whether a defendant is entitled to a lesser-included instruction, we review all the evidence presented at trial. *Jackson v. State*, 248 S.W.3d 369, 371 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd).

"Criminally negligent homicide is a lesser included offense of murder . . . ." *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992); *Jackson*, 248 S.W.3d at 371. Therefore, we need only determine whether some evidence exists to show Appellant was guilty only of criminally-negligent homicide. *See Ferrel*, 55 S.W.3d 589. "The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct." *Jackson*, 248 S.W.3d at 371. Merely because an actor did not intend the result does not necessarily entitle him to a jury instruction on criminally-negligent homicide. *Trujillo*, 227 S.W.3d at 168.

Here, the record does not contain evidence that Appellant lacked an awareness of the risk. *See Jackson*, 248 S.W.3d at 371-72. Appellant fought with everyone in the apartment including Earl, who was on the phone. Appellant left the apartment, returned with a gun, and threatened everyone there that he would kill them. Although the gun was holstered when Appellant first arrived, he soon brandished it and took aim at Ford. Accordingly, Appellant's acts of retrieving the gun, threatening the lives of the occupants in the apartment, unholstering and aiming the gun at Ford, and continuously escalating arguments with every occupant in the apartment was more than sufficient to show Appellant was "not only aware of the risk posed by the weapon, but [was] choosing to exploit that risk." *See Jackson*, 248 S.W.3d at 372; *see also Thomas v. State*, 699 S.W.2d 845, 850-52 (Tex. Crim. App. 1985) (holding that claim of accidental discharge does not necessarily raise an issue of criminally-negligent homicide). In other words, there was no evidence showing

Appellant was only guilty of criminally-negligent homicide, and as such, the trial court did not err by refusing to instruct the jury on the same. We overrule Appellant's fifth issue.

In his sixth issue, Appellant contends that the trial court erred by refusing to submit his jury instruction on the voluntariness of his written statement, which provided as follows:

> [Y]ou are instructed that unless you believe from the evidence beyond a reasonable doubt that the alleged confession or statement introduced into evidence was freely and voluntarily made by the Defendant without compulsion or persuasion, or if you have a reasonable doubt, you shall not consider such alleged statement or confession for any purpose nor any evidence obtained as a result thereof.

Appellant does not challenge the court's general instruction on voluntariness, nor the court's more specific instruction based on the facts presented. Those instructions provided:

> You are instructed that under our law a confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible in evidence if it appears that the same was freely and voluntarily made, without compulsion or persuasion, provided, however, that it be made in writing and signed by the accused, and show that the accused has been warned prior to making such statement or confession, by the person to whom the same is made that: (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; and (2) any statement he makes may be used as evidence against him in court; and (3) he has the right to have a lawyer present to advise him prior to and during any questioning; and (4) he may have his own lawyer, or, if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview or questioning at any time.

> You are instructed that a promise will render a confession "involuntary" if it is (1) of some benefit to the accused (2) positive (3) made or sanctioned by a person in authority, and (4) of such a character as would likely influence the accused to speak untruthfully. So, in this case, if you find from the evidence, or if you have a reasonable doubt thereof, that prior to the time the defendant gave the alleged statement or confession to Detective Ahearn, if he did give it, the said Detective Ahearn promised to give TYRONE DWIGHT NEAL the telephone number of his father and that such promise if made would likely influence TYRONE DWIGHT NEAL to speak untruthfully, then you will wholly disregard the alleged statement or confession and not consider it for any purpose nor any evidence obtained as a result thereof.

Appellant merely argues that his additional general instruction was a correct statement of the law and

should have been included, as well.

Generally, when evidence from any source raises a defensive issue and the defendant properly requests a jury charge on that issue, the trial court must submit it to the jury. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993), *citing Moore v. State*, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978). The trial court must instruct the jury to disregard illegally obtained evidence if the defendant raises a fact issue concerning the manner in which the evidence was obtained and requests the instruction. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986). The evidence which raises the issue may be strong, weak, contradicted, unimpeached, or unbelievable. *Muniz*, 851 S.W.2d at 254, *citing Sanders v. State*, 707 S.W.2d 78, 80 (Tex. Crim. App. 1986).

Article 38.22 of the Code of Criminal Procedure governs the admissibility of an accused's custodial statement, providing that it may only be admitted if it was voluntary. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon 2005). Once the voluntariness of a statement is raised, the trial court is required to give a voluntariness instruction. *See Oursbourn v. State*, 259 S.W.3d 159, 176 (Tex. Crim. App. 2008). However, the law only requires a general instruction on voluntariness in accordance with the statute. *Dinkins v. State*, 894 S.W.2d 330, 352-53 (Tex. Crim. App. 1995); *Mendoza v. State*, 61 S.W.3d 498, 505 (Tex. App. – San Antonio 2001), *aff'd*, 88 S.W.3d 236 (Tex. Crim. App. 2002). Fact-based instructions should be excluded. *Mendoza*, 88 S.W.3d at 240.

Assuming Appellant raised the voluntariness of his confession simply because he claimed the detective would not give him the piece of paper with his father's phone number on it until after he gave a statement, the trial court did not err by refusing to include his requested voluntariness instruction in the charge. The law merely required that the court give an instruction on the general law of voluntariness, which it did. *Dinkins*, 894 S.W.2d at 352-53; *Mendoza*, 61 S.W.3d at 505. And even if the court was required to give an additional general instruction on voluntariness like the

one Appellant proposed, we note that the trial court went one step further and gave a fact-based instruction for the jury to determine whether to consider his statement. Although Appellant's general instruction would have been preferred over the fact-based instruction given, the latter instruction was to Appellant's benefit, and Appellant seemingly recognizing this fails to challenge that instruction on appeal. We simply fail to see how an additional general instruction on voluntariness when Appellant already received a general and a specific, fact-based instruction on voluntariness could possibly result in reversible error. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (noting that when a defendant fails to object to error in the court's charge, he must show egregious harm). Having received more than he was entitled to, the trial court did not err in failing to include an additional, general instruction on voluntariness. *See, e.g., Barber v. State*, 511 S.W.2d 937, 941 (Tex. Crim. App. 1974) (when proof of a prior conviction has been admitted, the court, absent a request from the defendant, may charge the jury that the testimony was admitted, not as proof of defendant's guilt of the crime charged, but only as it may affect his credibility as a witness, and when such charge, as given was beneficial to the defendant, there is no harm). We overrule Appellant's sixth issue.

Appellant's seventh issue contends that the application paragraphs in the jury charge violated his rights to an unanimous verdict. The indictment, in two paragraphs, alleged Appellant committed murder. The first charged murder as intentionally or knowingly causing death, and the second charged murder as causing death by committing an act clearly dangerous to human life with intent to cause serious bodily injury. The jury charge tracked the indictment accordingly, but the verdict form simply stated that the jury found Appellant guilty of murder as charged in the indictment.

The law requires that a jury must not only reach a unanimous verdict, but also agree that the defendant committed one specific crime. *See Stuhler v. State*, 218 S.W.3d 706, 716-19 (Tex. Crim.

App. 2007); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). However, that does not mean that the jury must unanimously find that the defendant committed the crime in one specific way or even with one specific act. *See, e.g., Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006). In *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), the Supreme Court explained that when the *actus reus* was murder, the jurors simply had to agree that the defendant had committed that crime. *Id*. at 630. The jury did not have to be unanimous on whether the defendant murdered with premeditation or in the course of committing a robbery. *Id*. at 631. To the contrary, the focus was on whether he committed the murder, not on how the murder was committed. *Id*. at 631-32; *accord Ngo*, 175 S.W.3d at 745-46.

Here, the indictment provided two different means of committing the same offense, that is, a single offense of murder with different method and means possibilities. The jury was instructed to convict Appellant of murder if they found he intentionally or knowingly caused Patterson's death, or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Patterson's death. TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2) (Vernon 2003); *see also Lugo-Lugo v. State*, 650 S.W.2d 72, 80 (Tex. Crim. App. 1983) (murder is "committed when the conscious objective or desire of the perpetrator was to cause death or where the perpetrator was aware that his conduct was reasonably certain to cause death"). Appellant argues that murder under 19.02(b)(1) or 19.02(b)(2) are different offenses, requiring juror unanimity for each. However, the Court of Criminal Appeals has consistently held that the subsections of section 19.02(b) provide alternative methods or means of committing the same offense. *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh'g) (determining that the indictment did not allege different offenses, but only alleged different ways of committing the same offense); *Jefferson*, 189 S.W.3d at 311 (clarifying that the statute establishes different modes or means by which a single

offense may be committed). Thus, the submission of the general verdict was proper because the "indictment did not allege different offenses but only alleged different ways of committing the same offense . . . ." *Aguirre*, 732 S.W.2d at 325-26.

In short, whether Appellant intentionally caused Patterson's death, or whether Appellant intended to cause Patterson serious bodily injury and committed an act clearly dangerous to human life that caused Patterson's death, only a single crime of murder was committed. *See Jefferson*, 189 S.W.3d at 311 (quoting *State v. Johnson*, 243 Wis.2d 365, 627 N.W.2d 455, 459-60 (Wis. 2001), *cert. denied*, 534 U.S. 1043, 122 S.Ct. 621, 151 L.Ed.2d 543 (2001)) (discussing that jury "'unanimity is generally not required on the alternate modes or means of commission'" of an offense); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (explaining that the unanimity requirement is not violated when the jury has the option of choosing between alternate modes of commission); *Aguirre*, 732 S.W.2d at 326; *Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd); *Garcia v. State*, 246 S.W.3d 121, 141-42 (Tex. App.–San Antonio 2007, pet. ref'd). As such, the trial court's charge did not authorize a non-unanimous verdict, and we therefore overrule Appellant's seventh issue.

In his eighth issue, Appellant contends that because the trial judge did not orally pronounce a fine during sentencing, the fine entered in the court's judgment should be deleted. The State disagrees, arguing that the oral pronouncement was ambiguous, and that once the jury's verdict, the court's pronouncement, and the written judgment are read together, the fine should not be deleted from the judgment.

A "sentence" is the part of the judgment ordering the punishment to be executed as prescribed by law. *See* TEX. CODE CRIM. PROC. ANN. art. 42.02 (Vernon 2006). A fine, when assessed, is part of the sentence and must be included in the oral pronouncement of the sentence.

*See* TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a) (Vernon Supp. 2009).  Where a conflict exists between the oral pronouncement and written memorialization of the sentence, the oral pronouncement controls.  *See Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). However, when the pronouncement is ambiguous, the jury's punishment verdict, the court's pronouncement, and the written judgment should be read together in an effort to resolve the ambiguity.  *See Aguilar v. State*, 202 S.W.3d 840, 843 (Tex. App.–Waco 2006, pet. ref'd); *Stinson v. State*, No. 05-07-01236-CR, 2009 WL 1267348, at *7 (Tex. App.–Dallas May 8, 2009, no pet.) (op., not designated for publication).

In this case, the following colloquy occurred once the jury reached its punishment verdict:

JUDGE:      [Madame Foreman], has the jury reached a verdict?

FOREMAN:  Yes, ma'am.

JUDGE:      And is that verdict: We, the jury, find that all of the allegations set out in enhancement paragraph one of the indictment are true and we assess the punishment of the Defendant at confinement in the Institutional Division of the Criminal Justice System for 42 years and assess a fine of $10,000?

FOREMAN:  Yes, Your Honor.

JUDGE:      If that is the verdict of each of you, please raise your right hands.  Let the record reflect that all hands are raised.

Mr. Neal, will you please stand.  The jury having found you guilty and assessed punishment, is there any legal reason why your client should not be sentenced?

COUNSEL:  There's no legal reasons.

JUDGE:      Mr. Neal, it is therefore ordered, judged and decreed of this Court that you be taken by the sheriff of Dallas County, and by her safely held and transferred to a receiving agent of the Institutional Division of the Criminal Justice Division.  And you shall be kept there for 42 years or until your sentence is otherwise discharged according to law.  Your sentence is imposed to start today, February the 23rd, 2007.  However,

you will be given credit for all the time that you've spent waiting in the Dallas County Jail.

We find the court's oral pronouncement of the sentence ambiguous. Immediately prior to pronouncement of the sentence, the court questioned the jury whether their verdict was 42 years confinement and a $10,000 fine. Further, when asking if there was any legal reason why Appellant should not be sentenced, the court stated that the jury "found you guilty and assessed punishment." It was clear that the court intended to sentence Appellant in accordance with the jury's verdict as the court immediately proceeded to orally pronounce the sentence, and its subsequent written judgment reflected the fine assessed. The court merely failed to include all aspects of the sentence, namely, the fine, when it orally pronounced Appellant's sentence. Under the facts of this case, we hold that when the jury's verdict, oral pronouncement, and written judgment are read together, resolution requires that the fine be included in the judgment. *Aguilar*, 202 S.W.3d at 843; *Stinson*, 2009 WL 1267348, at *7. Appellant's eighth issue is overruled.

In his final issue, Appellant argues that the combined effect of all of the errors set forth in his previous issues warrants giving him a new trial. However, we have found no merit in any of the arguments raised. Although a number of errors may be found harmful in their cumulative effect, non-errors, in their cumulative effect, cause no reversible error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *Ozuna v. State*, 199 S.W.3d 601, 613 n.7 (Tex. App.–Corpus Christi 2006, no pet.) (finding there was no cumulative error in context of ineffective-assistance-of-counsel claim). Accordingly, Appellant's final issue is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.

January 13, 2010                              GUADALUPE RIVERA, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)